THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HOWARD PROSSER, Appellant.

Argued October 17, 1955; decided December 1, 1955.

354

*John B. Corcoran* for appellant. Defendant has been deprived of his fundamental right to a speedy trial. (*People ex rel. Battista* v. *Christian,* 249 N. Y. 314; *People* v. *McLaughlin,* 291 N. Y. 480; *People* v. *Smith,* 2 N. Y. Crim. Rep. 45; *People* v. *Beckwith,* 2 N. Y. Crim. Rep. 29; *Arrowsmith* v. *State,* 131 Tenn. 480; *Thomas* v. *People,* 67 N. Y. 218.)

*Richard N. Donovan, District Attorney,* for respondent. I. The Oswego County Court properly denied appellant's motion to dismiss the indictment on the ground that appellant had been denied a speedy trial. (*People* v. *Hall,* 51 App. Div. 57; *Arrowsmith* v. *State,* 131 Tenn. 480; *People* v. *Beckwith,* 2 N. Y. Crim. Rep. 29; *People* v. *Smith,* 2 N. Y. Crim. Rep. 45; *State* v. *Arthur,* 21 Iowa 322; *People* v. *Perry,* 196 Misc. 922; *State* v. *Kopelow,* 126 Me. 384; *State* v. *Slorah,* 118 Me. 203; *Beavers* v. *Haubert* 198 U. S. 77.) II. The lapse of time between the indictment in 1946 and trial in 1955 did not prejudice appellant.

FULD, J. The defendant in this case was brought to trial, and convicted, on an indictment six years after it had been returned by a grand jury. The Appellate Division condemned the delay, but concluded that the conviction should be affirmed. We take a different view. We condemn the delay and hold that it compels reversal of the conviction and dismissal of the indictment.

In January of 1946, the Grand Jury of Oswego County returned five indictments against the defendant and his brother. One of these indictments, No. 6792, charged him, in one count, with burglary and, in the second count, with grand larceny; another, No. 6793, charged him with carrying a loaded revolver concealed upon his person. On January 30, 1946, he was arraigned in Oswego County Court and pleaded not guilty to each of the five indictments. Soon after, however, when

brought on for trial, the defendant appeared with assigned counsel and, following an off-the-record conference at the bench, pleaded guilty to all of indictment No. 6793 and to the larceny count of indictment No. 6792. A week or two later, in February, 1946, he was sentenced, as a fourth felony offender, to imprisonment for an indeterminate term of from fifteen years to life.

The defendant was confined to Attica State Prison, and there he remained until 1952. In March of that year, he instituted a habeas corpus proceeding in the County Court of Wyoming County, claiming that, since one of his previous convictions was for a misdemeanor only, he had been improperly sentenced as a fourth felony offender. The court agreed with his position and, accordingly, on April 10, 1952, issued an order directing that he be returned to the Oswego County Court for resentencing. The Oswego County authorities, apparently doubting the power of the Wyoming County Court to make such an order, refused to recognize or obey it. The defendant then initiated a second habeas corpus proceeding in Wyoming County, which resulted in an order directing that he be released from prison on July 21, 1952, if the first order was not complied with by that date. (*People ex rel. Prosser* v. *Martin,* 208 Misc. 875.) This order was affirmed by the Appellate Division (281 App. Div. 1008) and by us (306 N. Y. 710); it was expressly noted that, by this time, " the term of imprisonment that might have been lawfully imposed [had] expired " (p. 712).

Confronted with that determination, the district attorney had the defendant returned to the Oswego County Court for rearraignment on one of the three indictments to which six years before he had pleaded not guilty. On that rearraignment, his counsel moved to dismiss the indictment on the ground that the defendant had been deprived of his right to a speedy trial. The county court judge — who in 1946 had sentenced the defendant as a fourth offender and who later had declined to comply with the Wyoming County Court orders directing his resentence — denied the motion. After some further delay, in part attributable to the defendant, the case proceeded to trial; he was convicted, upon two counts, of burglary and grand larceny and sentenced, as a prior felony offender, to imprisonment for consecutive indeterminate terms of from ten to twenty years on one count and of from five to ten years on the other.

As already indicated, the judgment was affirmed on appeal. It was the Appellate Division's opinion that the defendant had waived his right to a speedy trial by failing to invoke the remedy afforded by section 668 of the Code of Criminal Procedure (285 App. Div. 997).

The guarantee of a speedy trial — embodied in the United States Constitution and in the constitutions of many states — is found in section 8 of the New York Code of Criminal Procedure. In so many words, that section announces that " In a criminal action the defendant is entitled * * * To a speedy and public trial.'' Section 668 of the Code, providing the means by which the defendant may enforce his right, declares: " If a defendant, indicted for a crime whose trial has not been postponed upon his application, be not brought to trial at the next term of the court in which the indictment is triable, after it is found the court may, on application of the defendant, order the indictment to be dismissed, unless good cause to the contrary be shown.''

The speedy trial guarantee, preventing undue delay between the time of indictment and trial, serves a threefold purpose. It protects the accused, if held in jail to await trial, against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and, finally, like statutes of limitation, it prevents him from being " exposed to the hazard of a trial, after so great a lapse of time '' that " the means of proving his innocence may not be within his reach '' — as, for instance, by the loss of witnesses or the dulling of memory. (Report of Commissioners on Practice and Pleading [1849], p. 342, quoted in McKinney's Cons. Laws of N. Y., Book 66, pt. 2, Code Crim. Pro. [1945 ed.], p. 543; see, also, *United States* v. *Provoo,* 17 F. R. D. 183, 198, 203 [U. S. Dist. Ct., D. Md.], affd. 350 U. S. 857.) Its benefits may be claimed, therefore, by any person under indictment, whether he be imprisoned to await trial on the pending charge, whether he be admitted to bail or whether he be a prisoner already serving a sentence in the same jurisdiction for a different crime. (See, e.g., *People* v. *Corrado,* 150 Misc. 787, 789–790; *Frankel* v. *Woodrough,* 7 F. 2d 796, 798–799; *Fulton* v. *State,* 178 Ark. 841, 843–845; *Harris* v. *State,* 194 Md. 288, 296; *State* v. *Smith,* 10 N. J. 84, 93; *Arrowsmith* v. *State,* 131 Tenn. 480; *Ex Parte Chalfant,* 81 W. Va. 93; *State* v. *Keefe,* 17 Wyo. 227,

257–259; see, also, Note, 118 A. L. R. 1037.) While the first two considerations noted above may not loom large in the case of a defendant in prison for another offense, there can be no dispute that it is vital, even for him, that the trial be had while witnesses are available and memories fresh.

It is clear, then, that Prosser was entitled to a speedy trial, and it is equally clear that he did not receive one. Although what amounts to an undue delay is " not fixed by the statute in days or months ", depending as it does " upon the circumstances of each particular case " (*People* v. *Hall,* 51 App. Div. 57, 62; see *Beavers* v. *Haubert,* 198 U. S. 77, 87), it may not seriously be urged that the six-year lag in the present case was consistent with the mandate for a speedy trial.

Section 668 enables the court, if the defendant is not brought to trial " at the next term of the court in which the indictment is triable," to order a dismissal of the indictment, unless the defendant himself procured the postponement of the trial or unless the prosecution shows " good cause to the contrary ". The district attorney contends that the defendant waived his right to a speedy trial and may not call upon the provisions of section 668, even though he sought no postponement and even though the prosecution failed to show " good cause " for the six-year inaction on its part. Underlying that position are both the premise that it is the accused who has the obligation of securing a speedy trial and the feeling that it would be unfair to permit a defendant to sit back and do nothing until the prosecutor notices the case for trial, and then claim that he should be discharged because of undue delay.

Although a number of jurisdictions have implementing provisions similar to section 668, the results reached by their courts have not been uniform.

In some states, it has been said that, if the defendant does not affirmatively and promptly make known his desire for a speedy trial, he may not be heard to complain. (See, e.g., *Pietch* v. *United States,* 110 F. 2d 817, 819; *McCandless* v. *District Court,* 245 Iowa 599; *State* v. *McTague,* 173 Minn. 153; *State ex rel. Davis* v. *Bayless,* 38 Okla. Cr. 129.) As the Minnesota court expressed it, " the accused must go on record in the attitude of demanding a trial or resisting delay " or be deemed " to have waived the privilege." (*State* v. *McTague, supra,* 173

Minn. 153, 154–155.) Under such decisions, the burden of obtaining a prompt trial is on the defendant; the state, having procured an indictment, is not compelled to do anything until the defendant demands a trial, and even then, if the demand is not made promptly, it may claim that he has waived his right to a speedy trial. Years may have elapsed, so that the time between indictment and trial exceeds even that permitted by the applicable statute of limitations between commission of the crime and indictment, and yet, these cases hold, the prosecution remains free to press the charge and proceed to trial.

In other states, the courts have taken a different view; the burden of proceeding promptly is on the state, not on the defendant. (See, e.g., *State* v. *Carrillo,* 41 Ariz. 170, 172; *State* v. *Chadwick,* 150 Ore. 645, 650; *Flanary* v. *Commonwealth,* 184 Va. 204; *Ex Parte Chalfant, supra,* 81 W. Va. 93.) In the words of the Oregon Supreme Court, '' When the state sees fit to charge a defendant by indictment with the commission of a crime, it is equally the duty of the prosecutor to see that defendant is arraigned and enters a plea and speedily brought to trial, as it is to charge him with the offense in the first place ''. (*State* v. *Chadwick, supra,* 150 Ore. 645, 650.)

The second view is the one that we find sounder and more persuasive. It is the state which initiates the action and it is the state which must see that the defendant is arraigned. It is likewise the state which has the duty of seeing that the defendant is speedily brought to trial.[1] And from this it follows that the mere failure of the defendant to take affirmative action to prevent delay may not, without more, be construed or treated as a waiver. The plain language of section 668 unerringly points that conclusion. In effect, it calls for dismissal of an indictment, if its trial is unduly put off, '' unless good cause to the contrary be shown.'' As we read the statute, it is incumbent upon the prosecution to establish '' good cause '' for its own delay, and not simply the fact that the defendant has failed to demand a trial. When the legislature

---

1. In this connection, it is of more than passing significance that, although section 668 of the Code permits the defendant to move to dismiss the indictment, the legislature neither by that statute nor by any other provision empowers him to bring the indictment on for trial. (Cf. Civ. Prac. Act, §§ 181, 433.)

expressly excepted from section 668 a defendant "whose trial has * * * been *postponed upon his application*," it disclosed a design not to except a defendant who has neither applied for nor agreed to a postponement. In *Flanary* v. *Commonwealth* (*supra*, 184 Va. 204), dealing with a statute similar to ours, the court said, in terms here most apt (p. 211):

> "If the legislature had intended the silence of the accused * * * to be a waiver of his right, it could, and doubtless would, have used appropriate language to convey that intention. If the language used is to be given its usual and ordinary construction, it is impossible to hold that the words, 'continuance granted on the motion of the accused,' convey the same meaning as 'silence,' or 'the accused must demand a trial'".

The Report of the Commissioners on Practice and Pleading, who drafted section 668, further demonstrates that it was not designed to shift the responsibility for a prompt trial to the defendant, or to prevent him from taking advantage of slow moving or dilatory prosecutors. The fact is that some such remedy as a motion to dismiss was regarded as necessary because, under the then "existing practice," it all too frequently happened that an indictment was "kept forever suspended over the head of the defendant." (Report of the Commissioners on Practice and Pleading, *op. cit.*, p. 341.) As the Commissioners pointed out, although the statute of limitations protects defendants from indictments returned too long after the commission of the crime, "yet, when an indictment is once found, there is no limitation of time, within which it must be brought to trial." (*Ibid*, p. 342.)

The sole purpose of section 668 when enacted, therefore, was to provide relief for persons denied a speedy trial (see *People* v. *Beckwith*, 2 N. Y. Crim. Rep. 29), and it imposed no obligation on the defendant affirmatively to seek such a trial or be deemed to have waived it.

This is not to say that a defendant may not consent to delay in bringing the indictment to trial and thereby waive his right. (See, e.g., *People* v. *Perry*, 196 Misc. 922; *Pietch* v. *United States*, *supra*, 110 F. 2d 817, 819; *State* v. *McTague*, *supra*, 173 Minn. 153, 154–155; see, also, Notes, 129 A. L. R. 572; 44 L. R. A. [N. S.] 871.) Not only is such a waiver spelled out where both

prosecution and defense agree upon or stipulate for a postponement, but it may be implied, for example, from the fact that the defendant, although present in court, interposes no objection to a postponement sought by the district attorney. In that situation, the defendant's silence and failure to assert his right to an immediate trial would be relevant. The inquiry in each case is factual and, like the question whether there has been undue delay, depends '' upon the circumstances of each particular case.'' (*People* v. *Hall, supra,* 51 App. Div. 57, 62.) In this case, not only was there never an application for a postponement in court or upon notice to the defendant, but there was absent even an awareness that the prosecution was being kept alive or that a trial would eventually be had (cf. *People* v. *Perry, supra,* 196 Misc. 922), without which there could be no factual basis for inferring consent or waiver.

In the light of what occurred in 1946, the defendant had no reason to believe that the remaining indictments would ever be tried. At the time he pleaded guilty, there appears to have been some sort of '' compromise '' whereby, in return for such a plea, the remaining charges were not to be pressed. (Cf. *People* v. *Beckwith, supra,* 2 N. Y. Crim. Rep. 29; *People* v. *Smith,* 2 N. Y. Crim. Rep. 45.) While at first he pleaded not guilty to all five indictments, he later changed his plea as to one indictment (No. 6793) and as to a count of another (No. 6792), after an off-the-record conference, suggested by the court, between defendant's assigned counsel, the district attorney and the presiding judge. The fact that defendant went to jail upon those indictments, did not prevent the prosecution from proceeding with the others (see *Thomas* v. *People,* 67 N. Y. 218), but the sentence of imprisonment for the very long term of from fifteen years to life seemingly sufficed as punishment for all the crimes charged. And, in explaining the reason for the six-year delay, the district attorney acknowledges that his predecessor in office '' thought there was nothing to be gained by further prosecution ''. Certainly, if the district attorney did not plan any further action, the defendant could hardly have believed or expected that he would be brought to trial on the remaining indictments. The prosecutor did, it is true, change his mind in 1952, but it is quite evident that he did so only because the

defendant's 1946 sentence had been cut short by the court's determination that it was in excess of law. (See *People ex rel. Prosser* v. *Martin, supra,* 306 N. Y. 710.)

In short, then, since there was an untoward delay of six years, without a waiver by defendant of his section 8 right to a speedy trial, and since the prosecution failed to show the slightest " good cause " for that delay, the trial judge should have granted defendant's motion and dismissed the indictment.

As for the asserted danger that a defendant may sit back and, if the prosecution fails for one reason or another to move the indictment for trial expeditiously, claim his right to a speedy trial and go free, it is somewhat less than real. Overlooked is the fact that the district attorney may at any time have the case placed on the calendar for a particular day. The defendant and his counsel will be in court and, if at that time the People seek a postponement and the defense fails to oppose or object, its failure will probably import consent to the ensuing delay and bar any later claim that defendant's right to a speedy trial had thereby been denied. The actual result of the present decision, therefore, is merely to impose upon the officers, charged with enforcing the law and who secured the indictment, the quite reasonable, far from burdensome, duty of noticing it for trial.

It may well be that adherence to the rule here announced will on occasion result in the discharge of one guilty of crime, but, as to that, we need but say, as we did in *People* v. *Jelke* (308 N. Y. 56, 68), that our decision " transcends the issue of * * * [a particular defendant's] guilt or the disposition of [a] particular case."

The judgments should be reversed and the indictment dismissed.

CONWAY, Ch. J., DESMOND, FROESSEL, VAN VOORHIS and BURKE, JJ., concur; DYE, J., taking no part.

Judgments reversed, etc.