Peter T. Farrell, J.
Defendant, under an indictment for grand larceny first degree (automobile) has moved for its dismissal under the provisions of sections 8 and 668 of the Code of Criminal Procedure. The motion is granted. There would be no occasion for further comment were it not for the fact that this appears to be a case of novel impression, involving a determination of the impact of the provisions of section 669-a of the Code of Criminal Procedure upon what has heretofore been the right of a defendant to move for a dismissal of an indictment under section 668. The facts are as follows:
On January 5, 1955, when the indictment was handed up and filed, defendant was confined at Elmira Reformatory serving a term of imprisonment to which he had been sentenced December 3,1954 — for attempted robbery first degree — by another Judge of this court. After its filing the District Attorney made the existence of the indictment known to the warden of Elmira Reformatory but did not move it for trial. On September 1, 1957, section 669-a of the Code of Criminal Procedure went into effect and on December 23, 1957 the District Attorney received a certificate of defendant’s inmate status and a notice and request for a final disposition of the indictment, pursuant to the *280 provisions of the new statute. On February 27,1958 the District Attorney applied for and obtained a writ in obedience to which defendant was brought before the court March 12, 1958 for arraignment. At his request, counsel (present in court) was assigned, the defendant pleaded ‘ ‘ not guilty ’ ’ and was given until March 26, 1958 to move against the indictment. The present motion was made within the period allowed. In furtherance of its address to the issue of law, the court directed all subsequent continuances, in open court, in the presence of defendant and his counsel and with their consent, given without prejudice to such rights as defendant had at the time of his motion to dismiss. And, but for the possible consequences of his service of the notice and request, defendant’s right to a dismissal is clear. (People v. Chirieleison, 3 N Y 2d 170, 173-174; and cf. People v. Wilson, 5 A D 2d 690, with People v. Sadler, 4 A D 2d 963.)
There is not so much as a suggestion that defendant procured, caused, consented to, acquiesced in or (apart from his notice and request) condoned the past delay. (Code Crim. Pro., § 668; People v. White, 2 N Y 2d 220, 223-225; People v. Godwin, 2 A D 2d 846, affd., 2 N Y 2d 891; People v. Prosser, 309 N. Y. 353, 359-360.) Nor has the District Attorney made any attempt to offer “ good cause ” for its occurrence. Defendant’s application for his discharge is timely, even by the view that the right to dismissal is waived if not asserted until the trial is “at hand ”. (State v. Nilnch, 131 Wash. 344, 345-346.) A dismissal is, there-' fore, required unless, as the District Attorney contends, defendant waived his right under section 668 by earlier resorting to the procedure established by section 669-a. That is the sole ground of opposition to defendant’s motion.
Otherwise stated, the District Attorney’s position is that defendant’s resort to the new procedure constitutes an expression of desire to stand trial and an election to do so, and that once having made his election the prisoner cannot reverse his field and request a dismissal under section 668. Logical support is lent to that position by the concept of waiver of delay— and of the right to a discharge on that account — by a defendant’s consent to or acquiescence in still further delay (People v. White, supra; People v. Prosser, supra; People v. Sadler, supra; 14 Am. Jur., Criminal Law, § 138, p. 863 ; 22 C. J. S., Criminal Law, § 469, p. 719), or by his withdrawal of a formal demand for his discharge for past delay, his announcement of readiness for trial and his application to have the case set for trial (State v. Moss, 92 Ore. 449, 451, 461). The principle would be brought to bear in this case by regarding defendant’s request under *281 section 669-a as a consent to a further delay of as much as 180 days. The consideration for his election and consent might be found in an assurance of either a trial without any further undue delay or a dismissal precluding renewal of prosecution for the same offense (Code Grim. Pro., § 673, as amd. by L. 1957, ch. 440). Granting the apparent forcefulness of its appeal to logic, nevertheless I decline to accept the District Attorney’s view, for to do so is to evaluate section 669-a as a booby trap instead of a new weapon in a defendant’s arsenal. I do not believe that the Legislature intended — or accomplished — any such result.
To begin with, the language of section 669-a, taken literally, does not put a defendant in a posture of asserting a “ desire to be brought to trial upon the charge ” (see, e.g., Cal. Penal Code, § 1381), or of requesting the District Attorney to “ bring him to trial on the charge ” (see, e.g., Ore. Rev. Stat., § 134.510). By his use of the section 669-a procedure he is committed to a “ request for a final disposition ”*). The Legislature’s discrimination in the choice of these words becomes pointed in the light of the fact that its Joint Legislative Committee was familiar with the California and Oregon statutes which, as just noted, do, literally, put the convict in the position of requesting a ‘ ‘ trial ’ ’ on the outstanding charge. The comparative study thus reflected suggests that the wording actually used was deliberately selected to avoid putting the prisoner in the position of requesting a trial. That reduces the scope of decision to a determination whether earlier use of the new remedy is, per se, an abandonment by election or otherwise, of the right to request a dismissal under section 668 because of previously occurring delay. I hold that it is not. I reach that conclusion because the statute does not expressly so provide and because what I perceive to be the intent and purpose of and the policy considerations underlying this new legislation oppose its interpretation in such a way as to make it a trap for the unwary inmate.
Acclaimed as a new and additional remedy in the hands of a defendant imprisoned on another charge (1957 Messages of the Governor) the new procedure is, of course, particularly concerned with such persons but the statutes which establish it do not assume to cut off the convict’s section 668 remedy if his case is otherwise under its coverage. (Cf. People v. Godlewski, 22 Cal. 2d 677, 683-684.) The stated and only apparent pur *282 pose of section 669-a and its companion-statute, section 669-b, with their one way flow of benefits — to the prisoner — repel the notion that the Legislature might have intended to give with one hand and take away, indirectly, with the other.
Unmistakably evident in this new procedural plan is the accent given to the importance of the rigid to a speedy trial; — “a cardinal principle of our system of criminal justice.” (1957 Annual Report of N. Y. Joint Legis. Committee on Interstate Cooperation, p. 177.)
Specifically, it “ permits ” prosecutors to clear up outstanding charges while the evidence is fresh and, at the same time, gives the defendant the right to 1 ‘ precipitate ’ ’ a final disposition and thus resolve his prison status. Additionally, it makes for a fairer trial and a more adequate presentation of the evidence by both sides. The procedure by which this is achieved is such that the Commissioner of Correction is required to promptly inform the inmate, in writing, of the source and content of any indictment, etc., known to the commissioner, and of the prisoner’s “right to make a request for final disposition thereof ”, (Code Grim. Pro., § 669-a, subd. 1, par. [c].) Upon his part, the convict ‘ ‘ shall ’ ’ give or send to the commissioner and the latter is required to forward along with his own certificate (by registered or certified mail), to the appropriate District Attorney and court (§ 669-a, subd. 1, par. [b]) of the county in which the charge is pending, written notice of the inmate’s place of imprisonment and his request for a final disposition. The accused must be brought to trial thereon within 180 days after delivery of the notice, etc. (unless the court grant a necessary or reasonable continuance for good cause shown in open court) (§ 669-a, subd. 1, par. [a]). In the event that he is not, no court of the State any longer has jurisdiction thereof, the indictment, information or complaint is to be of no further force or effect and the court must enter an order dismissing it with prejudice (subd. 2). The order bars another prosecution for the same offense, even if a felony. (Code Crim. Pro., § 673, as amd. by L. 1957, ch. 440.) Section 669-b establishes an interstate procedure along the same lines adapted, of course, to the special needs of such situations.
Before section 669-b took effect, trial delay occasioned by the defendant’s imprisonment in another jurisdiction did not justify his demand for a discharge (People v. Brandfon, 4 A D 2d 679). As the Colorado court reasoned, one sovereign cannot be compelled to yield up its prisoner for trial by another. It may do so voluntarily, as a matter of comity, but in any event the local authority is under no obligation to apply to the foreign sov *283 ereign for the attainment of that end. (Matter of Schechtel, 103 Col. 77, 83-85; cf. also, cases collected in 118 A. L. R. 1046-1048.) The provisions of the new section, in effect, have withdrawn that excuse from District Attorneys whose States are parties to the compact. One of the noteworthy features of the section is that by making his request, the prisoner is deemed: (1) to have waived extradition (a) to face all charges in the receiving State, and (b) to serve any sentence there imposed upon him, after completion of his term in the sending State, and (2) to have consented (a) to the production of his body in any court where his presence may be required to effectuate the purposes of the agreement, and (b) to his return to the original place of imprisonment (§ 669-b, subd. 1, art. Ill, par. [e]). Nothing in the article’s content is to be construed as depriving the prisoner of the right to contest the legality of his delivery pursuant thereto but such delivery may not be opposed on the ground that the executive of the sending State has not affirmatively consented to or ordered such delivery (art. IV, par. [d]).
Nothing in these new statutes expressly equates the service of a notice and request with an abandonment of the prisoner’s right to demand a discharge for past delay, either by election or by way of announcement of readiness for trial and request to have the case set for trial. No part of their content expressly affirms or denies the applicability, to the situations which they contemplate, of the principle — embedded in existing case law — of waiver of the right to request dismissal for past delay, by consent to or acquiescence in the further delay of 180 days which is one of the procedural incidents. Yet, in the interstate procedure, another area of waiver and consent is delineated. Thus, an abandonment by election or waiver by consent through the use of the procedures established by both sections is developed only by interpretation but the intent and purpose which these statutes were intended to carry out and the policy considerations which the intent and purposes were meant to serve challenge that interpretation. Even without the aid of a declaration of policy (§ 669-b, subd. 1, art. I) it is self-evident that the dominant purpose of the Legislature was to heighten the dignity of the right to a speedy trial by so further implementing it as to minimize the possibility of its future denial. No more visible than the king’s new raiment is any purpose to take away the defendant’s section 668 remedy indirectly, by making an abandonment or waiver of his right to invoke it against past delay, the subtle but destructive essence of the new procedure. If section 669-a has that effect it is not the 1 ‘ additional ’ ’ remedy which it has been supposed to be. It *284 becomes, instead, the means of partial defeat of the policy it was intended to carry out. It becomes, also, a hypocritical utterance, for if the past denial of the right is of such relatively little importance that loss of the section 668 remedy therefor is a matter of little, if any, consequence, then the right to a speedy trial is not so important after all. The Legislature surely did not so act as to deserve such an aspersion. But aside from that, there is still another reason why the statutes will not bear the interpretation under consideration. That is, that it may eventually prove that use of the new remedy is a matter of necessity, not one of choice. In that case, the convict who would otherwise be entitled to a section 668 dismissal for past delay may be trapped either by using or by neglecting to use the new procedure.
As the defendant Segura has found out in this case, his service of a notice-and request may be the predicate of an abandonment or waiver of his right to request a dismissal for the past delay. But, on the other hand, the longer he neglected to serve it, the greater the possibility that his omission to do so might be made the predicate of a waiver of his right to discharge by sleeping on his right to demand an end to the delay. In other words, there was and is a possibility that these new laws may be considered as a denunciation of our Prosser alliance with the jurisdictions in which, as it is said, the law makes the demand for a speedy trial for the defendant (State ex rel. Roth-rock v. Haynes, 83 Okl. Cr. 387, 391; Randolph v. State, 234 Ind. 57, 64-65). The Prosser opinion leaves room for that conclusion (People v. Prosser, 309 N. Y. 353, 358, supra; n., supra). If that be so, a defendant’s new right to request a final disposition may be attended by an obligation to make a timely request therefor, along with a risk that his omission to do so will spell out an acquiescence in the more recent delay, a waiver of the past delay and loss of the right to demand a discharge for such past delay.*
Thus, so far as his right to a dismissal for past delay is concerned, he is doomed if he does and he may be doomed if he *285 does not make timely service of a notice and request under the new procedure. Granted that nothing in the new law prevents him from first pursuing the old section 668 procedure to assert — and thus attempt to save — his right to a discharge because of the past delay, as a sort of adaptation of the old procedure. (See, e.g., People v. Chirieleison, 3 N Y 2d 170, 173, 174, supra; People v. Wilson, 5 A D 2d 690, supra.) Having done that, he may urge that his later notice and request merely make a record of opposition to any further delay. But even then, his claim may be countered by the view that the subsequent service of the notice and request amounted to a withdrawal of the earlier formal demand for discharge, and constituted an announcement of readiness for trial and a request that the case be set for trial. And if that view were sustained the defendant would be deemed to have abandoned his right to request a dismissal because of the past delay (State v. Moss, 92 Ore. 449, supra). Of course, these prisoners are presumed to know the law, “ everybody is presumed to know the law except His Majesty’s Judges, who have a Court of Appeal set over them to put them right.” (24 Univ. of Chi. L. Rev. 421.)* They must forecast the outcome of a dispute over a question which has presented difficulty to qualified counsel and the court in this case. Simplicity, of course, solves the dilemma, by taking the statutes to mean what they plainly say, without submerged, subtle contradiction of intent and purpose. On that basis I hold that the Legislature neither intended to nor did it give section 669-a the qualities of a cut-off statute and that this defendant did not abandon or waive his right, under section 668, to claim a dismissal for the past delay by the prior service of his notice and request.
Order entered accordingly.

 The Committee on Criminal Courts, Law and Procedure of the Bar of the City of New York, as quoted by the chief executive when he approved the bill (1957 Governor’s Messages), regards it as giving the defendant “ the right to request a trial”.

 Unfortunately, the time when and the manner in which the codefendant Taranski raised the issue of delay in the Qodlewshi case (22 Cal. 2d 677, supra) does not appear from the opinion. It seems though, that he was not aware of the outstanding charge (no warrant served) and did not make the statutory demand. The California court held that his ease did not fall within section 1382 of the Penal Code (a counterpart of our Code Grim. Pro., § 668) since an untried “ complaint ” was involved. It came under the provisions of section 1381 but his contention was overruled, with this observation: “ We find nothing unreasonable in the requirement of a demand. It does not abrogate the constitutional guarantee. It is merely regulatory of it.” (Pp. 683-684.)

 The original source has not been seen. The authors credit the quotation to Williams, Criminal. Law, General Part, 386, and he, in turn, attributes it to Judge Maulé (p. 433).