**UNITED STATES ex rel. Julius CIE-HALA, Relator-Appellant,**

v.

**J. Edwin LaVALLEE, as Warden of Clinton State Prison, Dannemora, New York, Respondent-Appellee.**

No. 171, Docket 27617.

United States Court of Appeals
Second Circuit.

Submitted by Consent Jan. 9, 1963.

Decided Jan. 16, 1963.

Christopher G. Stoneman, New York City, for relator-appellant.

Louis J. Lefkowitz, Atty. Gen. of New York (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Gretchen White Oberman, Asst. Atty. Gen., of counsel), for respondent-appellee.

Before CLARK, KAUFMAN and HAYS, Circuit Judges.

KAUFMAN, Circuit Judge.

Ciehala was indicted on October 26, 1945 by the Grand Jury of Richmond County, New York, for the crime of robbery, grand larceny, and assault. Before he could be brought to trial on these charges, Ciehala was sentenced as a third felony offender for the commission of another crime and was incarcerated. On April 24, 1951, the day after his release from prison, the relator was arraigned upon the indictment of October 26, 1945, and he was finally brought to trial and convicted on June 4 and 5, 1951, some 5½ years after his indictment. Two months later, before sentence was imposed, relator was committed to the Kings County Hospital for observation and mental examination. A report of two psychiatrists indicating that relator was "presently insane" and incapable of understanding the proceedings was confirmed by the trial court, and relator was ordered committed to the Matteawan State Hospital for the Insane. Ciehala's counsel then moved to set aside the verdict on the ground that the defendant was insane at the time of the trial and at the time of the commission of the crimes charged. These motions were denied. Similar motions were made—and denied once again—on June 27, 1952, and Ciehala was sentenced as a fourth felony offender on the conviction of June 5, 1951; by that time, he had been released from the State Hospital as no longer insane. Relator unsuccessfully sought appellate relief in the state courts and by petition for certiorari to the United States Supreme Court. It was in this petition, filed in July 1957, that relator first raised the question of the denial of his right under state law to a speedy trial, citing the 5½ year delay between the date of his indictment and the date of his trial. Ciehala subsequently sought state collateral relief and secured another appeal, albeit unsuccessful, through the state courts followed by a denial of certiorari, on the precise issues tendered to Judge Brennan in the court below on the petition for a writ of habeas corpus. It is undisputed that relator has exhausted his remedies.

Relator asserts that his rights to due process of law and equal protection of the law have been denied. He claims that he has not waived his right to a speedy trial in the state court and that a finding of such a waiver is violative of his constitutional rights because he was mentally incompetent prior to and during his trial, when a motion to dismiss would normally have been made. We find no merit in relator's claim, and we affirm Judge Brennan's denial of the application for a writ of habeas corpus.

Under New York law, the defendant in a criminal case is deemed to waive his right to a speedy trial if he fails to move for a dismissal of the indictment prior to the termination of his trial. See § 668 of the New York Code of Criminal Procedure; People v. White, 2 N.Y.2d 220, 159 N.Y.S.2d 168, 140 N.E.2d 258 (1957); People v. Prosser, 309 N.Y. 353, 130 N.E.2d 891, 57 A.L.R.2d 295 (1955). This is so whether the defendant "be imprisoned to await trial on the pending charge, whether he be admitted to bail or whether he be a prisoner already serving a sentence in the same jurisdiction for a different crime," People v. Prosser, 309 N.Y. at

356, 130 N.E.2d at 894. Ciehala had the opportunity to move for a dismissal of the indictment throughout the 5½ year period between the date of his indictment and the date of trial, during most of which time he was in prison. Relator's excuse for not so moving is his purported insanity in the crucial period before and during his trial. He would have the federal courts conclude without any supporting evidence that he must have been insane during that entire period merely because he was declared insane some three months after the termination of his trial. Fatal to this assertion is that this allegation of insanity, a purely factual matter, has already been heard by the state courts and determined adversely to the relator. The trial court, in denying the relator's motions to set aside the verdict on the ground of his insanity at the time of the crimes and during the proceedings, found that "there has been * * * no proof that at the time of the trial he was insane." The court's rulings were reviewed by the Appellate Division and the New York Court of Appeals, both of which courts affirmed the judgment of conviction. Since relator has not asserted that there was any fatal flaw in the state fact-finding process, see Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), he should not be permitted to challenge collaterally these findings of fact determined by the state courts on the trial level and confirmed on appeal. See McMahan v. Hunter, 150 F.2d 498 (10th Cir., 1945), cert. denied sub nom. McMahan v. Johnston, 326 U.S. 783, 66 S.Ct. 332, 90 L.Ed. 475 (1946); Whitney v. Zerbst, 62 F.2d 970, 972 (10th Cir., 1933).

Even if it could be successfully argued that relator was indeed insane at and before the date of his trial, we note that more than five years elapsed after his release from the state hospital before he asserted, in July 1957, the claim of deprivation of his right to a speedy trial. This was twelve years after his indictment and six years after his trial. He certainly could have raised the matter when he appeared in court for sentencing on June 27, 1952. This he failed to do. His silence for five years after sentencing—during uncontested mental competency—would constitute by itself a waiver under the laws of New York State.

We note, finally, that relator was represented by counsel at the time the motion for dismissal should have been made. Although Ciehala might have been mentally incompetent at the time, there is no assertion that his counsel was. Surely a timely motion could have been made by counsel, who is deemed to know whether his client has been deprived of a speedy trial by reason of the time elapsing between indictment and trial. United States v. Valentino, 283 F.2d 634 (2d Cir., 1960), where counsel, in order to advise the mentally incompetent defendant, had to obtain information which the defendant alone possessed, is therefore distinguishable. It is noted further, that although relator's trial was set for May 28, 1951, his counsel obtained an adjournment until June 4. It is quite clear that under the New York decisions, this request for an adjournment effected a waiver of the right to a dismissal of the indictment because of delay. As the New York Court of Appeals stated in People v. Prosser, 309 N.Y. at 359–360, 130 N.E.2d at 896: "Not only is such a waiver spelled out where both prosecution and defense agree upon or stipulate for a postponement, but it may be implied, for example, from the fact that the defendant, although present in court, interposes no objection to a postponement sought by the district attorney." The case for waiver is of course stronger where, as here, counsel for the defendant alone requests a postponement. See People v. White, supra.

Since the refusal to overturn relator's conviction rests upon two adequate state grounds—factual findings on the issue of his sanity and reasonable rules as to the time in which relator had to assert his rights—the application for a writ of habeas corpus was properly denied.