Paul J. Kelly, J.
Upon the application of defendant, Joseph Morton, and pursuant to the order of this court (Judge Young, *891 March 29, 1966), a hearing was held to inquire into whether Indictment No. 14,924 should be dismissed for failure to prosecute (Code Crim. Pro., § 668).
Defendant was indicted by the Nassau County Grand Jury for the crimes of assault in the first degree and assault in the second degree (2 counts) on the 25th day of March, 1958, nearly one and a half years after the commission of the alleged crimes. Thereafter and on the 1st day of June, 1965, seven years and two months after the return of the indictment, defendant was arraigned.
The witnesses called on behalf of the People indicated that defendant’s description, as well as that of his auto, were secured from the victim of the crime and on the day of the occurrence a teletype alarm was broadcast and a warrant of arrest thereafter issued. Shortly after the occurrence and continuing into January of 1959 several communications were sent by Nassau law enforcement officials to South Carolina authorities upon the belief that defendant might be visiting relatives within that jurisdiction. Other then these efforts, and one inquiry made to defendant’s previous employer and “ several ” inquiries with defendant’s brother, it is candidly admitted that no further efforts were initiated to locate this defendant.
From the testimony of defendant and the exhibits furnished upon the motion, it appears that subsequent to the occurrence, defendant continuously and openly resided and was employed in Queens County under the name of Joseph Morton. Defendant also testified that he at all times possessed a New York State driver’s license, had a motor vehicle registered to his name, filed Federal and State income tax returns, and did regularly visit his brother in Glen Cove. The People do not apparently deny defendant’s proximity to Nassau County nor his unsecluded activities, but submit that their investigation, while unfruitful, sufficiently demonstrates “good cause ” for the delay within the construction of section 668 of the Code of Criminal Procedure.
Section 668 of the Code of Criminal Procedure provides: “ If a defendant, indicted for a crime whose trial has not been postponed upon his application, be not brought to trial at the next term of the court in which the indictment is triable, after it is found the court may * * * order the indictment to be dismissed, unless good cause to the contrary be shown.”
For the most part, the construction of this statute is clear. Once an indictment has been returned, it is incumbent upon the People, without any initial application of the defendant, to bring the indictment on for trial, or in the alternative bear the *892 burden of establishing either “ good cause ” for the delay or a waiver on the part of defendant (People v. Prosser, 309 N. Y. 353). This authority further concluded at page 361. “ The actual result of the present decision, therefore, is merely to impose upon the officers, charged with enforcing the law and who secured the indictment, the quite reasonable, far from burdensome, duty of noticing it [the indictment] for trial. ’ ’ (Emphasis supplied.)
It must be recognized that without other limiting factors, a delay of some seven years and two months between indictment and arraignment would by itself be prima facie unreasonable and command dismissal of the indictment. (See: People v. Piscitello, 7 N Y 2d 387 [delay of 17 months]; People v. Bryant, 12 N Y 2d 719 [one year and 11 months delay]; People v. Prosser, supra [6-month delay]; People v. Wilson, 5 A D 2d 690 [21-month delay].) The court’s examination of these and other authorities reveal, however, that in each instance the prosecution was aware of the whereabouts of the defendant but failed to take the necessary affirmative action to bring the proceedings on for trial. While under the command of the statutory and case authorities, the People must notice the matter for trial, we must consider whether section 668 of the Code of Criminal Procedure is to be applied to a delay between indictment and arraignment where defendant’s location is not known to the prosecuting officer. It is clear that in absence of the awareness of defendant’s location, the office of the District Attorney was not in a position to arraign defendant or move the matter for trial.
It has been recognized that “It is the state which initiates the action and it is the state which must see that the defendant is arraigned” (People v. Prosser, supra, p. 358 — emphasis supplied). It must then follow that the People may not, without fear of jeopardy, return an indictment and repose without any effort to locate the defendant. The question remains whether the actions (or inaction) of an investigatory agency should be chargeable to the office of the District Attorney; and if so, whether the actions of the police authorities were so superficial as to work an unreasonable delay in proceeding with the arraignment and trial.
Insofar as whether the prosecution should be chargeable with the inactivity of police authorities, it would seem unrealistic to permit, to the detriment of the defendant, the prosecuting arm of our law enforcement agencies to insulate itself behind the possible inaction of another official agency. While we recognize the difficulty in control, the accused should not be jeopar *893 dized for the evil found in delay of prosecution, the effect of which, may well place beyond the reach of defendant the ability and ‘ ‘ ‘ the means of proving his innocence ’ * * * by the loss of witnesses or the dulling of memory ” (People v. Prosser, supra, p. 356).
Finally, and upon the issue of whether the People have demonstrated “good cause ” it appears that the sum total of the efforts to locate the defendant was the issuance of a warrant and teletype alarm, notification to South Carolina authorities, one inquiry to defendant’s old employer, and an occasional inquiry with defendant’s brother. It seems inconceivable that the authorities did not make inquiry of such agencies as the taxing authorities or motor vehicle bureau in an effort to secure information as to defendant’s whereabouts. This seems particularly unusual when the police had knowledge of his operation of a particular motor vehicle. Certainly, many extensive investigations to secure the whereabouts of a “ fugitive ” prove fruitless and such a defendant should not be heard to complain as to any delay in prosecution. Equally, the mere fact that the defendant is not apprehended should not stand as the sole criterion of establishing defendant as a “fugitive” to deny him the protective provision of section 668 of the Code of Criminal Procedure. Here defendant remained within the jurisdiction and did not secrete his whereabouts or identity. The proofs offered point to the conclusion that any reasonable investigation would have yielded his location.
Under the circumstances presented, we do not find defendant to be a “ fugitive ” who should be denied the beneficial effects of section 668 of the Code of Criminal Procedure solely because the indictment was returned and a superficial investigation failed to yield his whereabouts. Were such the ease, indictments could be obtained, warrants issued, and, without the happening of some fortuitous event, prosecutions would be indefinitely postponed. While it is true that some additional efforts were made over and above the broadcasting of a teletype alarm and obtaining of a warrant, and we realize that with the passage of time, fruitless searches may of necessity become less vigorous, we cannot find justification for a delay of over seven years on the basis of the efforts employed to locate this defendant. It is therefore ordered that the motion of Joseph Morton to dismiss the indictment, No. 14,924, is granted.