Burton B. Roberts, J.
In September, 1966, one Frank Rodriguez was shot and killed in New York County. A week later the defendant, Rosaly Santos, was arrested in Puerto Rico for a robbery there. A week after that, a New York warrant charging Santos with the Rodriguez homicide was filed with the Puerto Rican authorities. The following day, defendant signed a waiver of extradition to New York to face the homicide charges. A month later, on October 26, 1966, he was indicted by the New York County Grand Jury and charged with murder in the first degree.
*159 Six years later, after the completion of his sentence for the robbery in Puerto Rico, Santos was returned here and arraigned on the murder indictment on October 18, 1972.
Now, on the seventh anniversary of this indictment and the first anniversary of his pretrial incarceration without bail on the instant charge, defendant’s motion to dismiss the case for denial of his constitutional and statutory right to a speedy trial is granted.
In Barker v. Wingo (407 U. S. 514), the Supreme Court recently examined the right to a speedy trial (p. 530): “ The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed ”, the court stated. “ Length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant ” are the main factors to be considered.
In this case, then, the decisive Barher v. Wingo question is: What did the People of the State of New York do for six years while the defendant, who had done his part on behalf of a speedy trial by waiving extradition, grew older sitting in a Puerto Rican jail and the case, in the argot of the District Attorney’s office, “ grew hair ” sitting in a drawer on Leonard Street? The answer to that is somewhat unclear, there being a lack of sworn testimony on the subject.
However, two Assistant District Attorneys, including one who handled the case during the six-year period, strenuously maintain that the People did everything they could to bring the defendant here to stand trial.
The sole basis advanced for this claim is an exchange of correspondence consisting of the following letter from the office of the Attorney General of Puerto Rico, dated March 29, 1969, received in response to a request by the District Attorney’s office for information as to “ whether it would be possible for us to bring this defendant back as soon as possible and, if so, what procedure would be necessary ”:
“ Reference is made to your March 3, 1969 letter in relation to the above captioned subject. In the event that your office desires to extradite this subject back to the jurisdiction of the State of New York, before he completes the sentences, that subject is serving at the Commonwealth of Puerto Rico Penitentiary, Be advised that the Governor of the State of New York should send a formal extradition requisition to the Governor of the Commonwealth of Puerto Rico, requesting the extradition of this subject to the State of New York before he completes his criminal sentences in the Commonwealth of Puerto Rico. *160 In addition, this requisition should contain an extradition agreement to be signed by the Governor of the State of New York and the Governor of the Commonwealth of Puerto Rico, in which the State of New York must agree to extradite this subject to the State of New York before subject completes his sentences in the Commonwealth of Puerto Rico; and once subject is.convicted and properly sentenced in the State of New York, to return him back to the Commonwealth of Puerto Rico to complete the sentences which he is serving at this time at the Commonwealth of Puerto Rico Penitentiary.
“ We want to make clear that the Commonwealth of P.R. will not agree in any extradition agreement between the Commonwealth of P.R. and the Governor of the State of New York that: in the event subject is sentenced to a death penalty or live [sic] imprisonment in the State of New York to waive the jurisdiction of this individual, until after the completion of his sentences in the Commonwealth of Puerto Rico Penitentiary..
“ The requirements for a formal extradition requisition and extradition agreement are contained in Section 1881-a, 1881-c and 1881-d, Laws of Puerto Rico Annotated, Title 34.
“ Assuring you of our cooperation in all matters of mutual interests, I remain
Cordially yours,
(Signed)
Aleides Oquendo Chief, Criminal Division ’ ’
The prosecutors assert, in a combination of (a) unsworn testimony, (b) argument and (c) speculation, that the second paragraph above (a) did indicate, (b) does indicate and (c) must have indicated to them and every other Assistant District Attorney to have read it that Puerto Rico would refuse to give Santos to New York for trial until he finished his time in Puerto Rico, because the New York charges were punishable by death or life imprisonment.
To this I have three responses. The first is that I view the same communication as agreeing to release Santos for trial here as long as he was thereafter returned to Puerto Rico to complete serving his robbery sentence before serving any New York sentence. The second paragraph merely specifies that Puerto Rico wanted him back for this purpose even if the New York sentence imposed was the death penalty or life imprisonment.
Secondly, even if my ¡reading of it is erroneous, it is inconceivable that this 'letter, which is the last hint of activity in this *161 case until the defendant was released in October, 1972, could have been regarded at the time by the representatives of the People as dispositive of their efforts to bring this defendant to trial here — unless they were satisfied with it being so, especially in view of the fact that the case was already two and one-half years old by the time this correspondence was initiated.
The most important point, however, is that it does not matter to Santos which State is responsible for the delay ■— the impact on him is precisely the same. " It is the state which initiates the action and it is the state which must see that the defendant is arraigned. It is likewise the state which has the duty of seeing that the defendant is speedily brought to trial ” (People v. Prosser, 309 N. Y. 353, 358). The defendant’s right to a speedy trial cannot be tolled by apportioning the blame. The Fourteenth Amendment’s guarantees do not depend on the action or inaction of any particular State. They are designed to protect the defendant against State action of any kind which deprives him of his rights (cf. Shelley v. Kraemer, 334 U. S. 1, 14; see People v. Ganci, 27 N Y 2d 418, 431).
The People’s motion papers and oral argument make much of the fact that defendant has not demonstrated that his defense has been impaired by the delay. Such an assertion cannot even budge the Barker v. Wingo (407 U. S. 514, supra) scales already heavily laden with the passage of time, the prosecution’s own virtual inaction for six years and an additional year of pretrial incarceration. This delay of seven years approaches prejudice per se, inasmuch as “ what has been forgotten can rarely be shown ” (Barker v. Wingo, supra, p. 532).
Let the indictment be dismissed and the defendant discharged from custody.