**UNITED STATES of America, Appellant,**

v.

**Israel RODRIGUEZ, Appellee.**

**No. 493, Docket 75–1371.**

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1975.

Decided Jan. 5, 1976.

---

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, William J. Gallagher, New York City, of counsel), for appellee.

Edward R. Korman, Chief Asst. U. S. Atty., Brooklyn, N.Y. (David G. Trager, U. S. Atty., E.D.N.Y., Jonathan M. Marks, Asst. U. S. Atty., of counsel), for appellant.

Before MOORE and TIMBERS, Circuit Judges, and COFFRIN,* District Judge.

PER CURIAM:

This is an appeal by the United States of America (the "Government") from an order of the United States District Court for the Eastern District of New York, dismissing appellee's indictment on the ground that the Government did not comply with the Eastern District Plan for Achieving Prompt Disposition of Criminal Cases ("Plan"). Appellant argues that notwithstanding its failure to schedule appellee's arraignment less than six months after his arrest, appellee's indictment should not have been dismissed. A chronology of the underlying events facilitates analysis of this argument.

On December 3, 1974, Luis LaBoy, Jose LaBoy and appellee Rodriguez were arrested and charged with possession with intent to distribute three ounces of cocaine. The following day all three were arraigned. The prosecutor decided to seek an indictment charging only the LaBoys, and on February 14, 1975, after hearing the testimony of only one witness, the case agent, the grand jury returned a two count indictment. After the LaBoys interposed not guilty pleas, the case was set down for trial on May 19, 1975, and the Government filed its notice of readiness on May 2, 1975.

During the week-end before the La-Boys' trial, the Assistant United States Attorney ("Government's attorney") prepared for trial by, *inter alia*, interviewing an informant who was expected to testify for the Government. The informant assertedly disclosed evidence of Rodriguez's involvement with which neither the case agent nor the Government's attorney had previously been familiar. Upon this discovery, the Government's attorney notified Judge Bartel's chambers on May 17, 1975, that the Government would request an adjournment of the LaBoys' trial in order to seek a superseding indictment naming Rodriguez as well as the LaBoys. Before learning that Rodriguez was represented by counsel, the Government's attorney also telephoned him on May 18th and asked him if he would come to the courthouse for an interview. Declining the offer, Rodriguez volunteered that he expected to testify for the LaBoys.

On May 19, 1975, the Government formally moved the adjournment of the La-Boys trial to enable it to seek a superseder. The Government also notified the court orally that it would be ready to proceed with trial as soon as Rodriguez had time to prepare a defense. After some discussion the Judge instructed counsel for the LaBoys and Rodriguez to discuss a mutually agreeable trial date. This they did, and they informed the Court that they would be ready on July 29, 1975. (The Judge's long overdue June vacation prevented trial during that month.) Later that same day a superseding indictment was returned which was identical to its antecedent, except for the Rodriguez inclusion in each count.

Eight days later on May 28, 1975, Rodriguez was notified that arraignment on the superseding indictment had been scheduled for June 5, 1975, two days after the expiration of the six months' period which followed Rodriguez's arrest. The arraignment was adjourned until

* Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

June 6th, at which time all three defendants interposed not guilty pleas. On June 30, 1975, the Government filed a formal written notice of readiness for the rescheduled trial.

Subsequently the appellee moved to dismiss the indictment. After a hearing the Court granted the motion, relying on *United States v. Bowman*, 493 F.2d 594 (2d Cir. 1974).[1] *Bowman* held that in the absence of exceptional circumstances, the failure to arraign a defendant within the six months' period violates the Southern District Plan notwithstanding the Government's readiness to proceed before the expiration of those six months. The *Bowman* rationale is that a notice of readiness cannot become effective as a practical matter until such time as the case is assigned for all purposes to a judge, who is then in the position to achieve the Plan's objective of prompt case disposition. In the Southern District such assignment is not made until after arraignment, and since the defendant in *Bowman* was not arraigned until after the Plan's six months' period had expired, the Government's notice of readiness did not become effective within that time limitation.

That case and this one share several factual similarities. In both the Government notified the court of its readiness in timely fashion, and in neither was the defendant arraigned until after the Plan period expired. Also, the Government has belatedly acknowledged that, as is true of the Southern District, in the Eastern District a trial judge normally does not exercise control of a case until after the United States Attorney schedules arraignment.[2]

But here, unlike *Bowman*, the achievement of the ultimate objective of an arraignment-within-six-months rule obviates the utility of its application. Immediately following the Government's discovery of additional evidence and concomitant adjournment motion, the lower court rescheduled the trial for the next available date. The Court could do no more to promptly process the case. Nor would an earlier arraignment have had any effect on the Court's calendar schedule. Since the *Bowman* arraignment rule is not an end in itself, where its objective has been achieved by other means, its application would defeat justice, not serve it.

The lower court also faulted the Government for failing to more promptly examine its informant. The Court reasoned that more thorough case preparation would have obviated appellant's dilemma by uncovering the evidence incriminating Rodriguez well before the expiration of the Plan's applicable six month period. Thus, the lower court charged the Government with the elapsed time from appellee's arrest on December 3, 1974, until his indictment was returned on May 19, 1975.

We disagree with this analysis. The Government's attorney had no reason to interview the witness prior to the eve of trial. Unless we say that in every case the Government must call every potential witness before the grand jury, the Government's procedure was reasonable and proper. Indeed, the delay occasioned by the pre-trial interview disclosures further distinguishes *Bowman*. Pursuant to rule 5(h) of the Plan, delay attributable to "exceptional" circumstances is excluded from the computation of the time within which the Government must be ready for trial. As a preliminary hurdle, to qualify as "exceptional" the circumstances must not be something with which the Plan's drafters were familiar. *United States v. Favalo-*

1. After additional argument on the Government's motion for reconsideration of the September 8th order, the lower court entered a second Memorandum and Order adhering to its previous decision.

2. Although a case in the Eastern District is assigned to a judge upon filing of an indictment, the United States Attorney is responsible for scheduling arraignment pursuant to local Rule 2(b). Consequently the court often refrains from prodding the case forward until after the United States Attorney discharges those obligations.

*ro,* 493 F.2d 623 (2d Cir. 1974). If the circumstances are sufficiently extraordinary, a further analytical step requires balancing the public interest in prompt adjudication against competing interests served by the exception. *United States v. Rollins,* 487 F.2d 409 (2d Cir. 1973).

While pre-trial witness interviews are perfectly mundane, the disclosures precipitated by the pre-trial interviews in this case are not. It is fanciful to suppose that the drafters envisioned a situation where, in the course of preparation for one criminal case, fresh leads volunteered by government witnesses would warrant the institution of an additional criminal case against a defendant whom the Government's attorney had previously decided not to indict. Such circumstances are sufficiently extraordinary to warrant a balancing analysis of the competing interests affected.

First and foremost, we confront the interest which explains the Government's deferral of the informant's pre-trial interview until the eve of trial—effective case preparation. At a trial soon after a pre-trial interview the witness' recollection and accuracy may often be better than it would be if the interview had antedated the trial by several months. Such interview scheduling also minimizes the risks of duplicative preparation in the event of case re-assignment within the prosecutorial office. These interests are weighty, and if we were to hold that the delay under the circumstances was not "exceptional", they would be severely infringed. The Government could avoid dismissal of comparable indictments *in futuro* only by interviewing all of its trial witnesses in every criminal case months before trial. The harm this would effect is obvious.

This consideration outweighs all other pertinent factors. Appellee was not prejudiced by the delay. After ordering the Government to turn over all material to him which it had previously conveyed to the LaBoys, the lower court expressly reserved appellee's rights to make subsequent discovery motions. Appellee was arraigned eight days after he was indicted and only two days after the expiration of the six month period following his arrest. We also note that the application of Rule 5(h) in such circumstances is not susceptible of prosecutorial exploitation. The Government has no way of knowing whether or when expected witnesses will disclose new evidence inculpating an unindicted party. The assertion by the Government that new evidence has been discovered may always be explored, as it was below, at a hearing on a motion to dismiss.[3] We conclude that at least three days are excludable from the period of time following Rodriguez's arrest, and since their exclusion renders the Government's oral notice effective within the Plan period, we reverse and remand for further proceedings.

The order of the district court is vacated with instructions that the indictment be reinstated.

---

**3.** Appellee obliquely intimates that the Government decided to indict Rodriguez solely to deter him from testifying for the LaBoys, but nothing in the lower court order or memorandum bears this out. On the contrary it appears that the decision to seek an adjournment in the LaBoys trial was made *before* the Government's attorney was informed by Rodriguez that he intended to testify against the Government.