Joel J. Tyler, J.
PROBLEM
We are again faced with the interpretation of the term "exceptional circumstances” (CPL 30.30, subd 4, par [g]), upon defendant’s motion to dismiss for failure to receive a speedy trial. (CPL 170.30, subd 1, par [e] and CPL 30.30, subd 1, par [b].) Depending upon its meaning and application, the existence of such circumstances would excuse delays in bringing a misdemeanor case (here involved) to trial beyond the prescribed period of "ninety days of the commencement of a criminal action” (CPL 30.30, subd 1, par [b]).
Does the fact of the unavailability of Grand Jury minutes, because of the backlog of completed Grand Jury presentments and the marked shortage in the District Attorney’s office of stenographic personnel to transcribe them, present such an "exceptional circumstance”, which would toll the speedy trial statute in favor of the prosecution? Ancillary problems are also involved. If the People are to be afforded a reasonable period within which to produce such minutes, then (1) when should such reasonable period commence to run, and (2) what constitutes such reasonable period, after which the People must be charged with any further delay?
DECISION
1. A backlog of completed Grand Jury presentments and the inability of a reduced stenographic staff to transcribe them within a reasonable time does not constitute "exceptional circumstances” within the meaning of CPL 30.30 (subd 4, par [g]X
2. The People should be afforded a reasonable period to *245 transcribe and present such Grand Jury minutes, after a request therefor has been made by the defense.[1] Such a reasonable period should be no more than 21 days (or three weeks), during which the application of CPL 30.30 should be tolled.
3. Prejudice to the defendant or the fact that he is not incarcerated are not legitimate issues here.
4. Defendant has not waived his rights to a speedy trial by postponing his motion to the day of trial. Such motions may be made at any time "prior to the commencement of trial or entry of a plea of guilty.” (CPL 170.30, subd 2.)
5. Since the delay here exceeded in the aggregate the allowable period (statutory 90 days plus 21 days to transcribe Grand Jury minutes), this case should be and is dismissed under the authority of CPL 170.30 (subd 1, par [e]) and CPL 30.30 (subd 1, par [b]).
THE ISSUES
The defendant argues:
More than 90 days have elapsed since the commencement of this criminal action, and defendant has been and is ready for trial, except for the unavailability of the Grand Jury minutes, which he had duly requested. Accordingly, the case should be dismissed under the authority of People v Saunders (84 Misc 2d 467).
The People argue:
1. The period of delay, occasioned only by the failure to secure Grand Jury minutes, was as a result of exigent circumstances in an overwhelmed and overburdened stenographers’ office. Thus the delay was beyond the People’s control for which it should not be charged, as it represents an "exceptional circumstance,” contemplated as excusable under CPL 30.30 (subd 4, par [g]).
2. That the defendant has not been prejudiced by the delay, in that he is and has been at liberty awaiting trial, nor is there a claim that his defense has been impaired in any respect by the delay.
3. That defendant waived his right to a speedy trial in *246 delaying his motion for dismissal until the eve of trial, when he could have made it at least four months prior thereto.
THE FACTS
The chronology in the matter must be considered in a determination of these issues.
1. Defendant was arraigned on June 17, 1975, on a felony complaint; the case adjourned for a hearing or other disposition to June 18.
2. On June 18, the case was adjourned to June 19, on which day a hearing was had and held over for Grand Jury action.
3. On July 22, the defendant was indicted under sections 130.20 and 120.00 of the Penal Law (both misdemeanors) and the District Attorney ordered to file a prosecutor’s information in Criminal Court, which was so filed on July 22, and all parties notified to appear in Criminal Court on July 28.
4. On July 28, all parties appeared, but admittedly, the People were not ready to proceed and the case was adjourned to September 9.
5. On September 9 the case was adjourned to September 23 to be called in the Youth Part, where it would there be joined with the pending cases of codefendants.
6. On September 23, the case, joined with those of the codefendants, was adjourned to November 10, and the reason given appears on the file as follows: "For G. J. Minutes.”
7. On November 10, there was another adjournment to January 6, 1976. All parties appeared to be present. The file contains notation: "For Grand Jury Minutes.”
8. On January 6, again adjourned to January 27 with notation on file: "Final v. People” and "T. G. J. minutes.”
9. On January 27, the minutes apparently were available, both sides were ready for trial, but the case was adjourned to March 1 since, as the file notes: "No Jury Part Available.”
10. On March 1 again adjourned to April 12 for the same reason: "No Part Available.”
11. On March 29, 1976, the defendant served his motion papers herein, returnable April 12, when the motion was, in fact, argued. The trial was set for April 12 but did not commence before the argument of this motion.
*247 DISCUSSION
The mandate of CPL 30.30 appears couched in unequivocal terms. It requires that the court "must” dismiss the action if the People are not ready for trial in 90 days "of the commencement of the action.” Its clear intent is to compel diligent and industrious attention to the fair and appropriate disposition of cases through the trial process, if that is necessary to finally conclude them. (Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL, Supp, p 29; People v Feliciano, 75 Misc 2d 921, 925; People v Saunders, 84 Misc 2d 467, 470.) Its basic purpose is to afford and assure the realization of the defendant’s "fundamental”, constitutional right to a speedy trial. (US Const, 6th and 14th Arndts; CPL 30.20; Civil Rights Law, art 2, § 12; Klopfer v North Carolina, 386 US 213, 223; Barker v Wingo, 407 US 514, 515, 533.)
However, the law does permit of the tolling or exclusion of certain time periods in the computation of that 90-day limitation, where "exceptional circumstances” are present. (CPL 30.30, subd 4, par [g].) Some of those circumstances are delineated in that statute, but it is "not limited to” those so specified.
To the extent that they are not so specified, the determination of the existence, relevance and applicability of such alleged exceptional circumstances is left to the sound discretion of the courts. (People v Tolkow, 80 Misc 2d 1051, 1053.) It is in this substantially uncharted area, permitting the play of intellectual judicial discretion, that we now find ourselves. Thus, we are required to "engage in a difficult and sensitive balancing process.” (Barker v Wingo, supra, p 533; People v Imbesi, 38 NY2d 629, 631-632) limited only by logic, reasonableness and clear awareness of the constitutional and legislative purposes to be served.
In this balancing process, between acute societal interests and the protection of a defendant’s ancient, constitutional rights, we must take urgent care lest fundamental rights of either are caused to surrender to the myopia of transient concerns.
I do not view CPL 30.30, and particularly paragraph (g) of subdivision 4 thereof, as suggesting a doctrinaire avoidance of the historic balancing of those interests. Certainly, where it is urged that certain factors, outside of those specified in the law, exist and constitute exceptional circumstances, they *248 should not be disregarded, but rather they invite careful consideration in the exercise of the court’s discretion, so it may determine their propriety as they affect exclusion from the 90-day computations.
In such situations, each case should be considered upon its own facts. (Barker v Wingo, supra, pp 522, 523, 530-531.) It is impossible to establish "any rigid yardstick calibrated as to time lapse, which would yield a ready answer as to whether a given case should be dismissed because of failure to prosecute within a specified time.” (People v Imbesi, supra, p 631.) I see nothing in CPL 30.30 (subd 4, par [g]) to the contrary or which requires a dogmatic approach with respect to those items not specified as excludable.
Accordingly, I do not agree that in every case "Under CPL 30.30, there is no balancing test to be undertaken, no criteria to be weighed” or that "it is entirely irrelevant that the defendant * * * was not incarcerated or that he fails to assert any prejudice to his defense.” (People v Saunders, 84 Misc 2d 467, 470, supra.) Nor do I agree that "The use by the Legislature of the word 'must’ leaves no doubt that the discretion of the court is limited to those exceptions specifically written into CPL 30.30.” (People v Sturgis, 77 Misc 2d 766, 768, affd 46 AD2d 741, revd 38 NY2d 625.) All factors "not limited to” those circumstances spelled out in the statute, including the issue of the prejudice to defendant and that he is or is not incarcerated, are clearly to be considered by the court in the exercise of its discretion. In certain cases such factors may give rise to justifiable delay and thus constitute an allowable "exceptional circumstance.” (Barker v Wingo, 407 US 514, 530, 532, 537, supra; People v Imbesi, 38 NY2d 629, 631; CPL 30.30, subd 4, par [g]:) I have carefully considered these factors propounded by the People as excusing the delay; however, on balance, they are inappropriate and unpersuasive here, although they are relevant and may have substance elsewhere.
What is deemed mandatory under CPL 30.30 is a dismissal where—
1. more than 90 days of the commencement of the action have elapsed, and
2. further delay is not specifically excludable, and
3. the court determines, in its discretion, that circumstances unspecified in that statute, urged to be exceptional and ought to be excluded, do not justify exclusion.
*249 In developing the rationale for granting the motion herein, this court took particular note of the sagacious reasoning of Mr. Justice White's concurring opinion in Barker v Wingo (supra, p 538) that "unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State’s criminal-justice system are limited and that each case must await its turn * * * [such] approach also subverts the State’s own goals in seeking to enforce its criminal laws.” The case here is certainly of a "run-of-the-mill” variety. There appears to be no complex legal or factual issues here, nor has the court been advised of any.
Particular societal understanding must focus upon the unassailable recognition that "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused’s defense.” (United States v Marion, 404 US 307, 320; People ex rel Franklin v Warden, 31 NY2d 498, 503.) The court in Barker v Wingo (supra, p 519) confirms that "there is a societal interest in providing a speedy trial which exists separate from, and at time in opposition to, the interests of the accused.”
The public clamor for "Justice” and protection from the increasing hosts of criminal predators as balanced against its seeming reluctance to provide significant financial means to assure that justice and protection, appears to belie its understanding of the scope of the criminal justice problems and its claimed commitment to their solution.[2] Much of society views the management of criminal justice as moribund, unable to distinguish between the innocent and guilty, and unable to ensure either the defendant or the community a speedy trial in order to vindicate the innocent and punish the guilty. But its complaints lack conviction when the blame is placed upon a criminal justice system seriously impeded by insufficient and ineffective public attention.
It is this failure which often results in the court’s continu *250 ing difficulty to process through trial, within a reasonable time, the large backlog of criminal cases, thus affording defendants increasing opportunity* to manipulate the system. Its resultant effect urges upon the courts and prosecution unwanted and expanding considerations of plea bargaining, which, because of its extensive use and the results conceived in the public imagination, has caused and continues to cause a distressing cynicism and loss of respect for that system, while encouraging the bulging ranks of criminals.
Aside from its damaging and destructive effects upon the accused, both innocent and guilty, delay of the trial process has additional detrimental consequences for all neighborhoods. It affords those out on bail the opportunity to commit other crimes, and the longer the period between arrest and trial, the more tempting the opportunity to jump bail and escape. Pretrial detention is expensive both to society and defendants, and may unreasonably prolong vindication for those who may be innocent. It causes dismissal of cases, by the loss of witnesses and the dulling of memories, followed by the resultant release of the guilty. (Barker v Wingo, supra, pp 519-522.) It constitutes a denial of historic judicial ideals and ethics, conceived in our Federal and State Constitutions, while encouraging the substitution for such process, debilitating and allegedly practical, band-aid solutions merely to meet present pressing needs of our overburdened calendars. In this light, too many citizens view justice regrettably, in frustration, as a fond illusion.
The right to a speedy trial serving, as it does, substantial interests of society as well as those of the accused, may not be sacrificed upon the altar of practicality and reduced public treasuries. As former Chief Judge Fuld so eloquently reminded us in People v Ganci (27 NY2d 418, 431): "It is the responsibility of the State, or its subdivisions, to do what is necessary — by furnishing funds, facilities and personnel — to assure the effective operation of the judicial system, and that burden may not be shifted to the defendant. The rule is simply stated: constitution and statutes mandate a speedy trial, and it is incumbent on the State to provide it.”[3]
*251 One key to the revitalization of that system and its ability to deliver a speedy trial must be a view of judicial standards that give meaning and effect to the speedy trial mandate. The State should be required to respond to that mandate.[4]
To suggest that we forgive the prosecutor’s long delay in furnishing defendant with Grand Jury minutes, merely because of inadequate secretarial staff and typing backlog, is to excuse society’s responsibility. Such reasons should not be, alone, a countervailing consideration to the guaranteed right to a speedy trial. The court’s forbearance will not mitigate, but will only exacerbate, as aforesaid, society’s myriad problems with crime, criminals and criminal justice, for delay only breeds more delay. The People’s excuses are not here "within tolerable limits,” although other "temporary or permanent burdens on the prosecution in moving cases to trial” may, on balance, influence the application of the delay factor. (People v Kelly, 38 NY2d 633, 635.)
Although I hold with Saunders (supra) that the People may not be excused their failure to furnish Grand Jury minutes; however, such failure should be excusable, and the time excludable, only during such reasonable period that is necessary to transcribe and secure them, and only after the request therefor has been made by defendant. A defendant "ought to give reasonable notice to the District Attorney” that he requires such minutes. (People v Jaglom, 17 NY2d 162, 165, 166.)
We may be guided, in the determination of such "reasonable notice” by reference to CPL 460.70, which requires that in an appeal from a judgment, sentence or order, minutes must be filed within 20 days after the stenographer is directed to do so.[5] So guided, and rounding out the 20-day period to 21 days or three weeks, I deem such period of 21 days to be reasonable and within the meaning of "exceptional circumstances.” Any delay in securing Grand Jury minutes beyond 21 days should be chargeable to the People.
The People should not be required to make the assumption *252 that defense counsel will require Grand Jury minutes in each case. Accordingly, they should not be charged with the responsibility to secure them until requested by the defense to do so, and, in the case of a nonindigent defendant, such request must be accompanied by an offer to pay for the transcription. (People v Jaglom, supra, pp 164-165.)
Further, the People appear to suggest that the defendant has waived his right to a speedy trial by making returnable his motion to dismiss on the very day the action was scheduled for trial. Admittedly, "the filing was timely in a pure procedural sense” (i.e. People’s answering affidavit). The motion was argued before trial. There is nothing in the statutes to suggest that a motion to dismiss under CPL 170.30 (subd 1, par [e]) for failure to comply with CPL 30.30 must be made within any specified period. It is. timely if "made prior to the commencement of trial or entry of a plea of guilty.” (CPL 170.30, subd 2.)
I find nothing in defendant’s conduct to suggest or constitute a waiver of his speedy trial right. Such waiver must be both "knowingly and voluntarily made” and the entire responsibility is on the prosecution to show the existence of that requisite. (Barker v Wingo, supra, p 529; People v White, 32 NY2d 393, 399.) Courts should "indulge every reasonable presumption against waiver” (Aetna Ins. Co. v Kennedy, 301 US 389, 393) and they may not "presume acquiescence in the loss of fundamental rights.” (Ohio Bell Tel. Co. v Commission, 301 US 292, 307.) Mere inaction by a defendant, to prevent delay gives rise to no presumption of a waiver of Sixth Amendment rights (Barker v Wingo, supra, p 525; People v Prosser, 309 NY 353, 358), since the defendant has no duty concurrent with that of the prosecutor to bring a case speedily to trial; that duty resides exclusively with the State. (Barker v Wingo, supra, p 527; Dickey v Florida, 398 US 30, 37-38; People v White, supra, p 398; People v Prosser, supra, p 358; People v Johnson, 38 NY2d 271, 279.)
In applying the principles and statutes, aforesaid, I find:
1. The period from June 16, 1975 (date of arraignment) to July 22 (filing of prosecutor’s information) is not chargeable to the People. Chargeable time commences "from the date of the filing such accusatory instrument” (CPL 30.30, subd 5, par [c]; CPL 1.20, subd 17).
2. From July 22 to September 9, 1975, a total of 50 days, adjournments requested by People and chargeable to them.
*253 3. From September 9 to 23, when case was adjourned to be joined with cases of codefendants, a total of 14 days, not chargeable, as expressly excluded by CPL 30.30 (subd 4, par [d]).
4. From September 23, 1975 to January 27, 1976, a total of 128 days. The adjournments were ordered to afford the People time to secure the Grand Jury minutes. Apparently, those minutes were first requested by the defense on September 23, 1975, which was the first date, of several, on which the court noted that the reason for the adjournment was for that purpose. As aforesaid, the first 21 days should be and are excludable. Accordingly, the balance of 109 days is chargeable to the People.
5. The adjournments on January 27 and March 1 are excluded, since both sides were ready for trial but no jury part was available (see People v Henderson, 72 Misc 2d 12).
Accordingly, allowing for all excludable periods, the People are, nevertheless, charged with a delay well in excess of 90 days, namely, 157 days, compelling the unavoidable dismissal of this action.

. We do not consider whether or not the defendant has waived his right to the Grand Jury minutes by an undue delay in making a request therefor. The request for the minutes was made within the 90-day period and in advance of trial.

. When the whole of the criminal justice process is suffering painfully from a serious shortage of personnel and facilities, the New York City officials have announced a further cut in the 1976-1977 budget of $2,500,500, for that city’s Criminal Court, which represents a loss of 201 positions. (NYLJ, April 26, 1976, p 2, col 4.) The complaint of the New York County District Attorney, echoing that of others, decries the fact he is unable to adequately maintain his operations through his own budget and wishes his office had the clout of the unions. (NYLJ, April 27, 1976, p 1, col 2.) Certainly, some readjustment of societal priorities appears clearly indicated.

. "The ultimate remedy must be provision by the appropriate branches of government of the material and personal resources required to handle a court burden increased and increasing because of higher crime rates, .enlarged police activity, and, most of all, greater urbanization of our population. Nothing less will avoid eventual impalement on the dilemma between a general jail delivery and the violation of *251 constitutionally protected human rights.” (People ex rel. Franklin v Warden, 31 NY2d 498, 504.)

. Professor Lewis R. Katz, Justice is the Crime, p 221.

. Upon the recommendation of the Judicial Conference, three bills (A 5488, A 4401 and S 3688) were introduced in the State Legislature in 1971, seeking to enlarge the period from 20 to 45 days. All these bills died in committee.