OPINION OF THE COURT
Aaron D. Bernstein, J.
This is a motion by the defendant for an order dismissing the indictment pursuant to CPL 210.20 (subd 1, par [g]) on the ground that he has been denied a speedy trial. More particularly, the defendant claims that the delay of more than 17 months between the date of his arrest and the date that the People announced that they were ready for trial is a clear violation of the Sixth and Fourteenth Amendments of the United States Constitution, the New York State Constitution, and CPL 30.20 and 30.30.
The instant proceeding arose out of an alleged robbery of a bicycle on March 27, 1977 for which the defendant was subsequently arrested and arraigned on a felony complaint on September 26, 1977.
After several adjournments in the criminal court, this complaint was dismissed on December 2, 1977 because of the People’s failure to prosecute. Thereafter, this case was presented to the Grand Jury, and an indictment charging the defendant with robbery in the third degree and grand larceny in the third degree was filed on July 5, 1978. It is contended by the People that prior to the filing of the instant indictment, they conducted an exhaustive investigation into the whereabouts of this defendant, but were unable to locate him. For that reason, an indictment warrant was ordered on August 3, 1978.
On September 26, 1978 the defendant using the name of Jeffrey Smith was arrested for attempted burglary, to which he pleaded guilty and received a sentence of six months. The defendant was finally located at the Manhattan House of Detention and arraigned in this proceeding on January 24, 1979. After several adjournments at the direction of the court, *648 the People announced that they were ready to proceed to trial on February 14, 1979.
A defendant’s right to a speedy trial is guaranteed both by the United States and New York State Constitutions, and CPL 30.20. That right is violated if there is an excessive delay between the institution of the prosecution and the trial.
Initially, it must be noted that there is a distinction between delays occurring prior to the institution of a prosecution and those occurring afterwards. Delay in bringing a defendant to trial after a proceeding has been instituted, whether by felony information or complaint, arrest, detainer warrant, or indictment, is generally measured against the Sixth Amendment speedy trial requirement (Barker v Wingo, 407 US 514), and more particularly against the limitations imposed by CPL 30.30 (People v Sturgis, 38 NY2d 625). On the other hand, delay prior to the institution of a criminal proceeding is governed by the due process clause (United States v Marion, 404 US 307; United States v Lovasco, 431 US 783; People v Singer, 44 NY2d 241; People v Staley, 41 NY2d 789).
As applicable to this motion, CPL 30.30 (subd 1, par [a]) provides that where the People are not ready for trial within six months from the commencement of a criminal action charging a felony, the indictment must be dismissed. It is precisely this statutory concept, "commencment of a criminal action,” which this court is being requested to analyze in making its determination as to the point in time at which the jeopardy rule of CPL 30.30 attaches. The People contend that the criminal action herein was commenced by the filing of the indictment, so that the period of time between the arrest on September 26, 1977 and the filing of the indictment on July 5, 1978, should not be included when computing the six-month period of CPL 30.30. It is the defendant’s contention that both the criminal court action and the instant indictment are part of a single proceeding, notwithstanding the dismissal of the felony complaint on December 2, 1977, so that any time computation under CPL 30.30 must begin with September 26, 1977.
In this respect, CPL 1.20 (subd 17) defines the term "commencement of a criminal action” by stating that, "a criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court, and, if more than one accusatory instrument is filed in the course of the action, it commences when the first of such instruments is *649 filed.” At first blush, this definitional section would appear to resolve the problem at hand, by invoking the rule that the filing of the first accusatory instrument controls the date when the computation of time under CPL 30.30 commences. However, such a simplistic rule avoids completely the distinction between felony complaints that are held for the Grand Jury after a hearing pursuant to CPL 180.60, and those complaints which are dismissed at the criminal court level, or when the course of the action terminates. In order to properly reconcile these two situations, it is necessary to examine the language of CPL 100.05, which incorporates in total the definition relating to "commencement of a criminal action,” as embodied in CPL 1.20 (subd 17). Moreover, CPL 100.05 proceeds further by stating that, "[t]he only way in which a criminal action can be commenced in a superior court is by the filing therewith by a Grand Jury of an indictment against a defendant who has never been held by a local criminal court for the action of such Grand Jury with respect to any charge contained in such indictment. Otherwise, a criminal action can be commenced only in a local criminal court, by the filing therewith of a local criminal court accusatory instrument”.
When viewed through the linguistic filter of CPL 100.05, it becomes readily apparent that the term "commencement of a criminal action,” is a word of art that must be analyzed by construing the statutory language according to its natural and most obvious sense, without resorting to an artificial or forced construction. (People v Botazzi, 68 Misc 2d 106, 108-109.)
Therefore, in construing a statute, we must take the entire act into consideration (People ex rel. Ingber v Jackson, 5 AD2d 1019; People v Dethloff, 283 NY 309, 315) in order to determine the meaning of any of its parts. Whenever practicable, the court must give effect to all the language employed; a statute must be read so that each word therein will have a meaning and not so that one word or sentence will cancel and render meaningless another word or sentence (Matter of Albano v Kirby, 36 NY2d 526, 530). So in the interpretation of a statute, the court must assume that the Legislature did not deliberately place in the statute a phrase intended to serve no purpose, but must read each word and give to it a distinct and consistent meaning (McKinney’s Cons Laws of NY, Book 1, Statutes, § 98, p 223).
Accordingly, the term "commencement of an action” as defined in both CPL 1.20 (subd 17) and 100.05 has two possible *650 points of reference when a proceeding in a superior court is involved. The first concerns a proceeding initiated in the local criminal court and which has been held for action by the Grand Jury. The second relates to the filing of an indictment directly in the Supreme Court. What is crucial is the source from which each criminal case emanates (see Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 100.05, p 364). Thus, where a case is dismissed in the criminal court, the proceeding has effectively been terminated and any subsequent indictment by the Grand Jury cannot be considered as emanating from the criminal court.
The precise parameters of any "criminal action” are found in CPL 1.20 (subd 16) which states in pertinent part that a criminal action "(b) includes the filing of all further accusatory instruments directly derived from the initial one, and all proceedings, orders, and motions conducted or made by a criminal court in the course of disposing of any such accusatory instrument * * * and (c) terminates with the imposition of sentence or some other ñnal disposition in a criminal court of the last accusatory instrument died in the case.” (Emphasis ours.)
Clearly, therefore, it is the statutory mandate that where the criminal court makes a final disposition in a matter, i.e., dismissal due to a failure to prosecute, the criminal action has been effectively terminated, notwithstanding the fact that the charges for any underlying crimes can be renewed by an indictment.
Thus, the definition of CPL 1.20 (subd 17) is not in conflict with CPL 100.05. With the termination of the "action”, there was only one accusatory instrument in the criminal court "action”, and only one in the Supreme Court action. For this reason, the filing of the instant indictment on July 5, 1978 must be deemed to be the commencement of a new criminal action, which starts the running of CPL 30.30 from that point only. On the other hand, it is only where a case from criminal court is held for action by the Grand Jury that this statutory period starts to run from the commencement of the criminal court proceeding, because there is only one action, as there is no termination.
This interpretation of the statutory scheme has been adopted by Judge Gibbons of the Nassau County Court in the case of People v Laskowski (72 Misc 2d 580, 585), wherein he states, "The plain meaning and impact of this language is that *651 where a defendant is not held for Grand Jury action by a lower court, as where it dismisses a felony complaint for lack of reasonable cause and discharges the defendant (as in this case), the filing thereafter of a Grand Jury indictment commences a felony prosecution in a superior court in the first instance”.
The approach utilized by Laskowski (supra) has also been adopted by several Justices of this court, with apparent approval by the Appellate Division, Second Department (see, e.g., People v Hall [Justice Jaspan, Indictment No. 3679/75], affd without opn 64 AD2d 1034; People v McBride [Justice Aronin, Indictment No. 3230/76], affd without opn 64 AD2d 873, mot for lv to app den 45 NY2d 828).
However, we find more persuasive in this matter, the holding of the Appellate Division, Fourth Department, in People v Staley (52 AD2d 1056) which held that a 31-month delay between the lower court dismissal and the date upon which the indictment was returned did not violate the defendant’s right to a speedy trial under CPL 30.30 and the Sixth Amendment to the United States Constitution, since, during the period prior to indictment, the defendant was not under any form of restraint, custodial or otherwise. Although this decision was subsequently reversed (see People v Staley, 41 NY2d 789), the basis for said reversal rested upon due process rather than upon speedy trial grounds. Thus, the Court of Appeals stated that, "[a]s a result of the wholly unexplained 31-month delay, defendant was denied reasonably prompt prosecution of charges, a denial of due process of law which should result in the dismissal of this indictment.” (People v Staley, 41 NY2d, at p 790.) In this respect, it appears that the Appellate Division in Staley (supra), embraced, and the Court of Appeals impliedly countenanced, the notion that the original criminal court proceeding became a nullity upon its dismissal and that the new indictment represents the institution of a new and independent proceeding with respect to which the speedy trial statute may be applied, notwithstanding the occurrence of the original criminal court proceeding. Put another way, in order to be part of a single criminal action, a second accusatory instrument must void and supersede the initial accusatory instrument by virtue of superior power provided for in law. (People v Nizza, 95 Misc 2d 74, 78; People v Schildhaus, 15 Misc 2d 377, 379.) To the extent that the decision of Justice Hentel in People v Rodney (94 Misc 2d 994) is contrary to *652 this statutory analysis, we decline to follow it. (See, also, People v Honig, Sup Ct, Kings County, Justice Lentol [Indictment No. 3426/77]; People v Segarra, NYLJ, April 16, 1976, p 12, col 1.)
Having concluded that this proceeding was commenced by the filing of the indictment on July 5, 1978, the defendant can only prevail on the speedy trial portion of the instant motion, if the People are chargeable with more than six months subsequent to that date. However, it remains uncontroverted that the People renewed their investigation into the whereabouts of the defendant on August 3, 1978, and only succeeded in locating him on October 16, 1978, at the Manhattan House of Detention. It is axiomatic that we are not limited by "any rigid yardstick, calibrated as to time lapse, which would yield a ready answer as to whether a given case should be dismissed because of failure to prosecute within a specified time.” (People v Imbesi, 38 NY2d 629, 631; People v Watts, NYLJ, Jan. 19, 1979, p 13, col 3.) Thus, even though, "it is the state which has the duty of seeing that the defendant is speedily brought to trial” (People v Prosser, 309 NY 353, 358; People v Minicone, 28 NY2d 279, 281; People v Johnson, 38 NY2d 271, 279), we are required to "engage in a difficult and sensitive balancing process” (Barker v Wingo, 407 US, at p 533), "limited only by logic, reasonableness and clear awareness of the constitutional and legislative purposes to be served.” (People v Bonterre, 87 Misc 2d 243.) Clearly, on the facts presented herein, the People cannot be charged with that period between August 3, 1978 and October 16, 1978, when defendant could not, with due diligence, be located and when, in the fact, the defendant had been arrested during that interim, under a different name. Accordingly, that part of the motion which seeks to dismiss the indictment pursuant to CPL 30.20 is denied.
Turning to the remainder of defendant’s motion, the courts in this State have long held that, "unreasonable delay in prosecuting a defendant constitutes a denial of due process of law” (People v Staley, 41 NY2d 789, 791, supra), and that, "in a proper case, a lengthy and unjustifiable delay in commencing the prosecution may require dismissal even though no actual prejudice to the defendant is shown.” (People v Singer, 49 NY2d 241, 253-254, supra.) When analyzing due process claims, New York courts have generally employed a balancing test involving various factors which "must be evalu-
*653 ated on an ad hoc basis since no rigid precepts may be formulated which apply to each and every instance” (People v Taranovich, 37 NY2d 442, 445). In terms of this defendant’s due process rights, there are four factors of primary importance: (1) the length of the delay; (2) the reason for the delay; (3) the degree of actual prejudice to the defendant; and (4) the seriousness of the underlying offense. (People v Bryant, 65 AD2d 333, 336.) However, the mere claim by the defendant of a denial of due process based upon the ground of preindictment delay, is an insufficient basis for the court to either grant or deny the motion to dismiss the indictment, without a hearing. (People v Townsend, 38 AD2d 569; People v Charette, 57 AD2d 594.)
Accordingly, the respective attorney for each party is directed to contact my chambers in order to arrange a mutually convenient date for this hearing.