**Jessie Flores SANTIBANEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 944–82.**

Court of Criminal Appeals of Texas, En Banc.

May 14, 1986.

Ed Paynter, Abilene, for appellant.

Jorge Solis, Dist. Atty. and Randy Dale, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The record before us reflects that Jessie Flores Santibanez, appellant, was tried on an indictment that alleged the offense of murder, but was convicted by a jury for committing the lesser included offense of voluntary manslaughter, after which the jury assessed punishment at ten years' confinement in the Department of Corrections.

The Eastland Court of Appeals, after overruling appellant's sole ground of error, that the trial court erred in denying his motion to dismiss his indictment because the State had failed to comply with the provisions of the Speedy Trial Act, see Art. 32A.02, V.A.C.C.P., affirmed the appellant's conviction. *Santibanez v. State*, 677 S.W.2d 539 (Tex.App.—Eastland 1982).

We granted appellant's petition for discretionary review to make the determination whether the court of appeals correctly overruled his ground of error. Because we find that it did not, we will reverse its judgment.

The court of appeals correctly points out in its opinion that appellant was arrested on April 25, 1981, for committing the offense of murder of Jessie Portillo. For purposes of the Speedy Trial Act, this became the date the criminal action commenced against appellant. See Art. 32A.02, Section 2(a), supra.

Thereafter, on April 27, 1981, a complaint was sworn to before the district attorney of Taylor County by one of her investigators, alleging therein that appellant had caused Portillo's death *by stabbing him with a knife*.

Appellant was indicted on May 8, 1981, it being alleged therein that appellant caused the death of Portillo *by shooting him with a gun*. Nothing was stated therein about appellant causing Portillo's death *by stabbing him with a knife*.

The record also reflects that the case was set for trial for the week of August 17th. On August 11th, however, the district attorney filed a motion for continu-

ance, giving as reasons therefor that the trial docket of the court to which the appellant's indictment had been assigned was overly crowded; that at least 20 other defendants were awaiting trial for the week of August 17th; that she would be in trial on another case on August 17th; that she had spent "the majority of her time the past two and a half weeks trying and preparing for trial on three other felony cases"; that she "had also been actively engaged in interviewing prospective applicants to fill two positions in the office of Criminal District Attorney of Taylor County which are now vacant"; that such vacancies had "also increased the burden on the remaining staff to the point that the State of Texas cannot answer ready on all cases set at the present time."

In addition to what she stated in her motion for continuance, the district attorney also testified at the hearing that she was absent the services of two secretaries; that her duties as district attorney caused her to have to appear before the Commissioner's Court, represent county employees in Federal court, and perform duties as chairman of the Taylor County Bail Bond Board.

The record reflects that on August 17, 1981, the district attorney had five assistants, three of whom were qualified to try a case such as appellant's.

The district attorney did not state anything in her motion for continuance or in her testimony about the indictment not correctly alleging what the State intended to prove against appellant, namely, that he caused the death of Portillo *by shooting him with a gun*. As previously pointed out, the appellant was indicted on May 8th for causing Portillo's death *by shooting him with a gun*, rather than by causing Portillo's death *by stabbing him with a knife*.

The trial judge granted the State's motion for continuance and the case was reset for trial for October 13, 1981.

We pause to point out that at all times the appellant refused to give up any rights

that he might have had under the Speedy Trial Act.

When preparing for trial, that was then set to commence on October 13th, the district attorney then realized that the indictment incorrectly alleged the descriptive averment as to the means used by the appellant in causing Portillo's death, in that the indictment alleged that appellant caused Portillo's death *by shooting him with a gun*, when, instead, it should have alleged that he caused Portillo's death *by stabbing him with a knife*.

The record does not reflect why the State originally alleged in the indictment that the death was caused by gunshot wound, rather than a stab wound, or why the district attorney or some member of her staff, such as her investigator, who swore to the complaint against appellant, did not catch this error either before, during, or after the indictment was returned against appellant on May 8th.

The record reflects that appellant was reindicted on October 9, 1981, with the second indictment alleging that he caused Portillo's death "by stabbing him with a knife." On the same day, October 9, 1981, on motion of the district attorney, the trial court dismissed the original indictment. An effort was made by the district attorney to get the appellant and his counsel to waive their right to ten days in which to prepare for trial, but they refused. See Art. 26.04(b), V.A.C.C.P. The cause was then set for trial for January 6, 1982.

The record clearly reflects that the first announcement of readiness by the State on the reindictment did not occur until October 9, 1981, which was 168 days after the appellant's arrest. Under the Act, however, the State only had 120 days from the commencement of the criminal action, April 25, 1981, to be ready for trial, unless the State could bring itself within some exception or some excludable period of time. Thus, because more than 120 days had expired from the date the criminal action commenced, *without more*, it was obligatory on the trial judge to grant appellant's motion to dismiss because of the failure of

the State to comply with the provisions of the Speedy Trial Act.

The record also reflects that on December 15th appellant filed his first motion to dismiss the reindictment because the State had failed to comply with the provisions of the Speedy Trial Act. A hearing was held on the motion on January 6, 1982, after which the trial judge denied the motion.

During the hearing on appellant's motion to dismiss the reindictment, the district attorney made the following statements to the court: "[T]he State is ready for trial and has been ready for trial—was ready for trial on December 15, 1981, and has been ready for trial at all times since this case was reindicted on October 9, 1981."

Did the trial judge err in denying the appellant's motion to dismiss the reindictment because the State had failed to comply with the provisions of the Speedy Trial Act? We answer the question in the affirmative.

■ We agree with the State that the offense charged in the original indictment is the same as that charged in the reindictment because the only difference between the two is a change in the descriptive averment as to the means used by the appellant in killing Portillo. Since both indictments involve the same offense, the motion for continuance, if good, carries forward from the first indictment to the second indictment. *Perez v. State,* 678 S.W.2d 85 (Tex. Cr.App.1984); *Durrough v. State,* 620 S.W.2d 134 (Tex.Cr.App.1981). Cf., however, *Richardson v. State,* 629 S.W.2d 164 (Tex.App.—Dallas 1982).

Because the Speedy Trial Act addresses itself to prosecutorial delay, rather than to the judicial process as a whole, and because the question of the prosecution's preparedness does not encompass the trial court or its docket, we need not concern ourselves with whatever problems may have then judicially existed. *Philen v. State,* 683 S.W.2d 440 (Tex.Cr.App.1984); *Lee v. State,* 641 S.W.2d 533 (Tex.Cr.App.1982); *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr. App.1979).

In *Kalish v. State,* 662 S.W.2d 595 (Tex. Cr.App.1983), this Court stated the following: "When the Legislature chose to treat an arrest as commencement of 'a criminal action' and fashioned it to embrace 'the same offense or any other offense arising out of the same transaction,' it dictated that the State be ready for trial within whichever period of time was prescribed or suffer dismissal of the charging instrument ... Article 32A.02, Sec. 2(a); Article 28.- 061, V.A.C.C.P." (601).

■ The Act and this Court's decisions make it clear that if the statutory period of time, here, 120 days, has expired, and the accused invokes the Act, then the State must demonstrate both that it was then ready for trial and had in fact been ready for trial at all times within the statutory time period, or else the State must demonstrate or establish that sufficient periods of time are excludable under the Act, in order to bring its announcement of readiness within the statutory period of time. See, for example, *Smith v. State,* 659 S.W.2d 828, 830 (Tex. Cr.App.1983).

In the trial court and on appeal, the State sought to excuse an earlier announcement of ready on the grounds that because the Act excludes a reasonable period of delay resulting from a continuance granted at the request of the State, for additional time to prepare its case, and because of the exceptional circumstances of the case, the period of time from August 14, 1981, when the State's motion for continuance was granted, until October 9, 1981, when the State made its first formal declaration of ready, should be excluded. For reasons about to be stated, we are unable to agree with the State.

Art. 32A.02, Sec. 4(6), supra, provides that a reasonable period of delay resulting from a continuance granted at the request of the State shall be excluded, if the continuance is granted, "(A) because of the unavailability of evidence that is material to the state's case, if the state has exercised due diligence to obtain the evidence and there are reasonable grounds to believe the evidence will be available within a reason-

able time; or (B) to allow the state additional time to prepare its case and the additional time is justified because of the exceptional circumstances of the case."

Because the record clearly reflects that the district attorney never requested a continuance for any reason set forth in Art. 32A.02, Sec. 4(6), supra, the provisions of Section 4(6), supra, do not toll the period of time provided in the Speedy Trial Act.

■ However, we must decide whether Section 4(10), supra, applies to this cause. Sec. 4(10), supra, provides: "In computing the time by which the State must be ready for trial, the following period shall be excluded: any other reasonable period of delay that is justified by exceptional circumstances."

Was the "coup de grace" in this instance the fact that the district attorney found herself with an office suffering from devastating attrition?

Notwithstanding that we might personally sympathize with the many internal problems that what appears to have been an overworked district attorney had, the question before us is not whether she was an overworked district attorney, but the question, instead, is whether, for Speedy Trial Act purposes, the above internal problems that the district attorney had constitute an exceptional circumstance that would toll the running of the time provided by the Act.

As to just what will constitute an exceptional circumstance under Section 4(10), supra, such, of course, must be decided on a case by case basis, cf. *Lloyd v. State,* 665 S.W.2d 472, 475 (Tex.Cr.App.1984), also see *Hamilton v. State,* 621 S.W.2d 407 (Tex.Cr. App.1981), because the phrase "exceptional circumstance" is not defined in the Speedy Trial Act. Therefore, we must apply the phrase in context and construed according to the rules of grammar and common usage. Art. 3.01, V.A.C.C.P.; Art. 5429b–2, V.A.C.S. (the Code Construction Act).

In *Ordunez v. Bean,* 579 S.W.2d 911, 915, 917 (Tex.Cr.App.1979), this Court identified the Legislative motivation for passage of the Speedy Trial Act in the following language: "[T]he notion that criminal prosecution be tried speedily is in the public interest, the rationale being that prompt disposition of pending cases and swift punishment imposed on the guilty serve to protect the citizenry."

In sum, the very purpose of the Act is to make sure that the wheels of justice, once they commence turning, are kept turning.

In this instance, we find that the "exceptional circumstance" the district attorney urges concerned a lack of sufficient personnel needed to run an office the size of the Taylor County District Attorney's Office, i.e., the district attorney could not carry out her legal and statutory functions of that office because she had an insufficient number of qualified permanent and substitute secretarial personnel; she had an insufficient number of qualified investigators; she had an insufficient number of qualified assistant district attorneys. We recognize, of course, that to rectify such would cost the State and Taylor County many additional dollars and cents.

Although it has been implied in this cause that appellant's case was not the "run-of-the-mill" type criminal case, we find from the record before us that there is nothing which would reflect that it was unduly complex, or other than a "run-of-the-mill" type criminal case.

In that regard, we observe that in *Barker v. Wingo,* 407 U.S. 514, 538, 92 S.Ct. 2182, 2196, 33 L.Ed.2d 101 (1972), Justice White of the Supreme Court displayed sagacious reasoning when he stated the following: "[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal justice system are limited and that such case must wait its turn ... [T]his approach ... subverts the State's own goals in seeking to enforce its criminal laws."

The right of the accused to a speedy trial serves not only substantial interests of society but those of the accused as well. Therefore, such may not be sacrificed upon the alter of practicality and reduced public

treasuries. In this instance, it was the responsibility of the State, or its subdivision, to do what was necessary to assure that appellant would receive a speedy trial, as provided by the Speedy Trial Act—by appropriating sufficient funds and by providing adequate facilities to the district attorney. It was then the responsibility of the district attorney to employ qualified personnel to assure the efficient operation of her office. *People v. Ganci*, 27 N.Y.2d 418, 431, 318 N.Y.S.2d 484, 494, 267 N.E.2d 263 (New York Ct.App.1971).

We pause to point out that if the public wants "Speedy Justice" for those accused of committing criminal wrongs, and in turn protection from the increasing hosts of criminal predators, it must be willing to pay for an efficient system of criminal justice; otherwise, it must be willing to sacrifice its continuing distressing cynicism, while at the same time encouraging the bulging ranks of persons accused of committing crimes remaining untried in our jails. In short, the public cannot have it both ways. In this instance, the Legislature enacted the Speedy Trial Act, in an effort to speed up the prosecution of criminal cases. As part of the judiciary, it is our duty to see that that mandate is carried out, and, in carrying out that mandate, we cannot be deterred because of lack of funding or staffing, or whatever, of the prosecuting attorney's office.

Furthermore, for us to hold that such constitutes an exceptional circumstance would only exacerbate society's myriad problems with crime, criminals and criminal justice, for delay only breeds more delay. To put our seal of approval on the excuses the district attorney gave in this cause, as to why the appellant's cause should be continued, would amount not only to thwarting the intent of the Legislature in its enactment of the Speedy Trial Act, and would undermine the effectiveness of the Act, the purpose of which is to ensure that prosecutorial delay will not thwart the prompt trial of criminal cases.

We find and hold in this instance that the State's excuses do not constitute an exceptional circumstance. Cf. *United States v. Bowman*, 493 F.2d 594, 597 (2nd Cir.1974); *People v. Bonterre*, 87 Misc.2d 243, 384 N.Y.S.2d 351 (New York City Criminal Court 1976); *People v. Sturgis*, 77 Misc.2d 766, 354 N.Y.S.2d 968 (Monroe County Criminal Court 1974).

Therefore, the time granted under the district attorney's motion for continuance is not excludable from the computation of time under the Speedy Trial Act. The appellant effectively rebutted the State's announcement of ready on October 13, 1981. The trial court erred in denying appellant's motion to dismiss the indictment.

The judgment of the court of appeals is reversed and the cause is remanded to the trial court with instructions to dismiss the indictment in this cause for failure of the State to comply with the provisions of the Speedy Trial Act.

McCORMICK, J., dissents.

CLINTON, Judge, concurring.

Though the majority reaches a correct result, it obscures an important and significant question of law presented in this cause that needs to be addressed squarely and answered clearly—again.

The Texas Speedy Trial Act, Acts 1977, 65th Leg., ch. 787, p. 1970, eff. July 1, 1978, as amended by Acts 1979, 66th Leg. ch. 3, p. 4, eff. September 1, 1979 (Act), is largely codified in Chapter Thirtytwo A, V.A.C. C.P. Article 32A.02 requires the State to be ready for trial within a prescribed period of time, but § 4 permits exclusion of certain periods in computing the time by which it must be ready. One is § 4(10), *viz:*

"(10) any other reasonable period of delay that is justified by exceptional circumstances."

In the instant cause the Eastland Court of Appeals found:

*"The crowded condition of the docket was an exceptional circumstance* which justified excluding the period from August 14, 1981, to October 13, 1981, from the 120-day time period [footnote citing and paraphrasing § 4(10) omitted]. The

district attorney and the trial judge presented evidence showing *the overcrowded condition of the court's docket* at the time the court granted the State's motion for continuance. *Ordunez v. Bean,* 579 S.W.2d 911 (Tex.Cr.App.1979); *Ostoja v. State,* 631 S.W.2d 165 (Tex.Cr. App.1982)." [1]

*Santibanez v. State,* 677 S.W.2d 539, 541 (Tex.App.—Eastland 1982). That is the finding on which we granted review. [2]

The problem here lies in misreading the opinion of the Court in *Ordunez v. Bean,* 579 S.W.2d 911 (Tex.Cr.App.1979). The Court did not hold as a matter of law that a condition of "overcrowded dockets" of trial courts is an "exceptional circumstance" within the intendment and meaning of § 4(10). In an original mandamus proceeding it is the nature and quality of the judicial act under attack rather than the correctness of the judicial determination made that is at issue. So realistically speaking, all the Court did was to deny extraordinary mandamus relief, in part because the finding of the trial court "that overcrowded dockets are an 'exceptional circumstance' is necessarily a judicial determination rather than a ministerial act," *id.,* at 913, 914. Denial of mandamus for that reason is not a determination that the find-

ing by the trial court is correct as a matter of law, but is merely an application of the rule that mandamus is not available to compel a discretionary as distinguished from a ministerial act. *Ibid.*

Concurring in *Ordunez v. Bean,* I tried to explain that under the Act "a crowded court docket is simply not a circumstance that conditions readiness for trial on the part of the State," *id.,* at 918–919. [3] There the matter rested until Judge Odom reviewed it again in *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979). Going over much the same ground he concluded:

"In light of these several considerations, we construe and hold that the threshold standard for dismissal under Article 32A.02, Sec. 1, supra, i.e., 'the state is not ready for trial,' refers to the preparedness of the prosecution for trial, and does not encompass the trial court and its docket."

*Id.,* at 541. *Barfield* means for example the fact that a judge of a district court embracing three counties must apportion his time to both civil and criminal dockets will not avail the State. *Lee v. State,* 641 S.W.2d 533, 535 (Tex.Cr.App.1982); *Scott v. State,* 634 S.W.2d 853, 855 (Tex.Cr.App.

---

1. All emphasis is mine throughout unless otherwise indicated.

2. The majority opinion buries its treatment of that finding in the paragraph beginning "Because the Speedy Trial Act ..." on page 329.

3. "It must always be kept in mind that what we are addressing is the condition of readiness of the prosecuting attorney to try the particular case at issue rather than that of the trial court. It follows, therefore, that 'exceptional circumstances' that are found sufficient to exclude a reasonable period of delay in computing the time within which the State must be-ready for trial necessarily arise from something about the case rather than the business of the trial court or, indeed, the state of affairs in the office of the prosecuting attorney. Thus it has been held that to qualify as 'exceptional' within the meaning of the federal plan the circumstances may 'not be something with which the Plan's drafters were familiar,' *United States v. Rodriguez,* 529 F.2d 598, 600 (2 Cir. 1976) [footnote omitted]. Plainly, it being a matter of general common knowledge, we may attribute to the Legislature

its familiarity with the fact of overcrowded dockets in the trial courts throughout the State [footnote omitted]—actual awareness is revealed by Article 32A.01 of the Speedy Trial Act itself whereby trial of a criminal action is given preference over a civil case and trial of an accused who is detained in jail is given preference over trial of other criminal actions.

But, more significantly, a crowded court docket is simply not a circumstance that conditions readiness for trial on the part of the State. The exceptional circumstance exclusion pertains to the State being ready for trial, just as it does to the United States Attorney under a federal plan containing substantially the same provision, *U.S. v. Rollins,* 475 F.2d 1108 (2 Cir.1973). * * * Thus, so far as the State was concerned the highly overcrowded dockets in the district courts of El Paso County was of no moment whatsoever. The State being ready, or prepared to dismiss the case otherwise, the letter, intent and purpose of the act were satisfied in this case [footnote omitted]."

1982); see also *Lyles v. State,* 653 S.W.2d 775, 779 (Tex.Cr.App.1983).[4]

Despite spotty misunderstanding of *Ordunez v. Bean* and *Barfield,* however, this Court still "focuses on delay within the control of the prosecutor" in considering § 4 exclusions to determine whether the State is timely ready for trial. *Lloyd v. State,* 665 S.W.2d 472, 475 (Tex.Cr.App. 1984).[5] In finding that the crowded condition of the court docket is an exceptional circumstance the Eastland Court of Appeals fell into error. Since that was the sole basis on which it overruled the single ground of error advanced by appellant, we are not required to address other reasons the State assigned for not being ready for trial.

This Court is authorized to review "decisions of the court of appeals [on its own motion and] upon a petition for review," Article 44.45, V.A.C.C.P., which is to say "the reason for such decision," Article 44.-24(c), V.A.C.C.P. Nevertheless, the majority plows right ahead to find an answer to the question it poses, *viz:*

4. That the holding of *Barfield* has been misunderstood cannot be denied. See, e.g., *Ostoja v. State,* 631 S.W.2d 165, 167–168 (Tex.Cr.App. 1982), in which *Ordunez v. Bean* and *Barfield* are cited to support the statement that the Court "has also reasoned that Sec. 4(10) of the Act ... applies to overcrowded dockets of our trial courts." But reading *Barfield* in its entirety should convince one that such claim is untenable. First off, the contention under consideration was that "the word 'state' includes the trial court and that the complaint and information should have been dismissed when the court was not ready to try the case within 90 days," *id.,* at 539. Noting a universal concern over delay of trials in criminal cases, the Court reviewed at least three "speedy trial schemes" at work in the federal system and from its similarity with one of them concluded that the Act "is of the type of *speedy trial scheme that addresses itself to prosecutorial delay* rather than the judicial process as a whole," pointing out that its draftsmen "could have easily included the courts in its terms, but instead chose to declare that dismissal would ensue if 'the state' was not ready for trial," *id.,* at 541. Then the Court found further evidence in the Act indicating that "the Legislature was addressing itself to prosecutorial delay rather than delay resulting from the judicial process itself," *ibid;* the opinion quotes at length from my concurring opinion in *Ordunez v. Bean*

"Did the trial court err in denying the appellant's motion to dismiss the indictment because the State had failed to comply with the provisions of the Speedy Trial Act?" At p. 329.

With deference, that is too broad a question to be answered in this case. The Eastland Court of Appeals did not consider it, much less make it the reason for its decision. Furthermore, it has not been raised by appellant in his petition for discretionary review. The issue is simply not before this Court in this cause.

For the reasons given I concur in the judgment of the Court.

ONION, P.J., joins.

W.C. DAVIS, Judge, dissenting.

Article 32A.02, § 4(10) states:

Sec. 4. In computing the time by which the State must be ready for trial, the following period shall be excluded ...

(10) any other reasonable period of delay that is justified by exceptional circumstances.

to the conclusion that instances of exclusions in determining when the State must be ready "plainly contemplate only the prosecuting attorney and just as clearly exclude the idea that the trial court is embraced within the term 'the state' being ready for trial," *ibid.* After finding still further reinforcing evidence, the Court held as quoted in the text above. Necessarily, it rejected the contention that the charging instrument should have been dismissed when the trial court was not ready to try the case within the prescribed period of time.

Thus, in sum, what *Barfield* teaches is that the condition of the docket of a trial court in which a case in pending is utterly irrelevant to a determination of whether the State is timely ready for trial. Therefore, whatever that condition, it is not an "exceptional circumstance." Happily the author of *Ostoja,* supra, now recognizes that "we need not concern ourselves with whatever problems may have then judicially existed." At p. 329.

5. Alas, by perpetuating earlier misconceptions the *Lloyd* opinion may well contribute to renaissance of confusion over applicability of § 4(10) to "court delays as opposed to State delays." *id.,* at 475. This Court must absolutely declare again that "exceptional circumstances" within contemplation of § 4(10) "does not encompass the trial court and its docket," *Barfield,* supra.

**334**

Even though, as is pointed out in *Lloyd v. State*, 665 S.W.2d 472 (Tex.Cr.App.1984), most cases dealing with § 4(10) have fallen into the category of court delays, i.e., overcrowded dockets, absence of a material witness due to hospitalization, etc., surely some prosecutorial delays will constitute exceptional circumstances. Article 32A.02 clearly addresses itself to prosecutorial delays rather than those occasioned by the judicial process as a whole. *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App.1979). The language in § 4(10) does not indicate such a limitation, but seems to be a general catch-all designed to prevent dismissals like the one given today.

The record reflects that during the week that appellant's case was originally set for trial there were 47 other criminal cases pending in two district courts. Further, the prosecutor's office had two vacancies facing her while trying to prepare for criminal trials. Based on these circumstances the State's motion for continuance was granted. The majority has determined such circumstances are not "exceptional" under the statute. Prosecutors beware! If the circumstances evidenced by the instant case are not "exceptional," it will be the rare case indeed where they are held to be. For this reason I dissent from the majority opinion.

WHITE, J., joins this dissent.