OPINION OF THE COURT
Daniel F. McMahon, J.
By order to show cause, dated July 9, 1979, defendant’s attorney moved to dismiss the instant indictment for lack of a speedy trial under CPL 30.30. and 30.20. By decision, dated August 14, 1979, the County Court, Westchester County (Delaney, J.), directed that a hearing be held in Part II of the County Court within 30 days after entry of the decision, and that the District Attorney’s office calendar the hearing with the calendar clerk of Part II.[1] That decision/order was entered on August 17, 1979. The District Attorney’s office calendared the matter before the Honorable Isaac Rubin, Deputy Administrative Judge for the Supreme and County Criminal Parts of Westchester County in Part II of the County Court on September 14, 1979; Justice Rubin referred the hearing to this court subject to its conclusion of a murder trial then in progress.
The hearing was held on September 19, 1979. Prior to the calling of any witnesses at the hearing the Assistant District Attorney made reference to written regulations pertaining to the County Court, Part II, including number 11 thereof, which states: "The history of the case contained in the computer case history shall constitute a prima facie record of the case for all purposes, including a motion for speedy trial, unless controverted upon affidavit.” Furthermore, 13 exhibits, representing the case histories with regard to the instant indictment and other cases in which defendant’s attorney represented other defendants whose cases were disposed of prior to defendants, were admitted in evidence without objection. Justice Rubin was called by the People; Vincent W. Lanna, Esq., testified for defendant Joseph Pasquino; Assistant District Attorney Anthony Moley, Chief of the Superior Court Trial Division, was called in rebuttal.
Defendant Pasquino was indicted on June 10, 1974 and charged with bribery in the second degree (a class D felony), driving while intoxicated, and a violation of section 511 of the *1036 Vehicle and Traffic Law. The case was marked "Both Sides Ready” on September 9, 1974. The trial was held approximately two years later resulting in a jury conviction on the bribery and driving while intoxicated charges on October 13, 1976. On November 19, 1976 he was sentenced to an indeterminate term not to exceed three years. On that same day a notice of appeal was filed and an order to show cause containing a stay of execution obtained for bail pending appeal. Bail was granted. A new trial was thereafter ordered by decision of the Appellate Division, Second Department, dated October 16, 1978. That order was entered on October 30, 1978. Bail was continued. Thus, defendant has, during the entire course of this action, been at liberty on bail.
On November 10, 1978, following the filing of the order directing a new trial, the matter came on before Justice Rubin for a "determination of readiness”. The transcript of that proceeding indicates appearances by Assistant District Attorney Joseph W. Rakacky and Vincent Lanna, Esq., on behalf of the People and defendant respectively. The brief transcript further shows that after the clerk referred to the Pasquino case, Mr. Lanna immediately stated "The defendant is ready, Your Honor”. The court then (twice) indicated the case was being placed on a "G” track with a preference.[2] There was no statement on the record by Mr. Rakacky.
In his reply affidavit on this motion Mr. Lanna requested the evidentiary hearing which was held and affirmatively stated that the "appropriate computer printouts of [the] calendar [should be] marked as exhibits”. This court has taken judicial notice of paragraph 11 of the regulations governing County Court, Part II, concerning the computer case history being a prima facie record and has sua sponte examined and will also take judicial notice of the computer records specifically relating to the instant indictment. These records indicate that on November 13, 1978, the next regular court day following the November 10, 1978 call of this case before Justice Rubin (which was on a Friday), the case appeared at the top of the daily calendar listing "G” track cases.[3] It continued to *1037 appear on the daily printout for the "G” track through and including June 22, 1979. The listing for that date shows a note, in ink, reading "Should be on L track”. It next appeared on the "L” track computer listing a week later on Friday, June 29, 1979.* *[4] The speedy trial motion which was brought on by Mr. Lanna 10 days thereafter, has temporarily aborted the retrial. The case has remained on the "L” track (every Friday) since June 29, 1979.
At the outset of the scheduled hearing (on Wednesday, September 19, 1979), Mr. Lanna questioned the jurisdiction of this court on the grounds that the hearing had not been commenced within 30 days from the entry of Judge Delaney’s order. The court cannot agree with his interpretation of that order. The People calendared the hearing with the clerk of Part II (and notified defendant) for September 14, 1979, which date fell within 30 days from the entry of the order on August 17, 1979. Obviously, Justice Rubin had to disqualify himself from conducting the hearing as he was a prospective (and in fact became) a witness at the hearing. This court was then engaged in a murder trial. Justice Rubin appropriately referred the matter for a hearing to be held after the termination of that trial. In fact, the hearing was conducted while the jurors were still deliberating in the murder case. Accordingly, under all the circumstances, there has been compliance both by the People and by the court system in compliance with the order directing the hearing.
The thrust of this motion to dismiss encompasses both the statutory timetable of CPL 30.30 and the constitutional rights of a defendant to a speedy trial as codified in New York under CPL 30.20. CPL 30.30 clearly mandates that a motion to dismiss must be granted "where the people are not ready for trial within: (a) six months of the commencement of a criminal action [felony]”. (CPL 30.30, subd 1, par [a].) Furthermore, in the case of a retrial, CPL 30.30 (subd 5, par [a]) specifies that "where the defendant is to be tried following * * * an order for a new trial * * * the criminal action * * * must be deemed to have commenced on * * * the date the order occasioning a retrial becomes final”. Thus in this case the operative date is October 30, 1978.
Mr. Lanna outlined a history of this case in both his moving *1038 papers and reply, complaining that 12 other indictments in which he represented other clients were disposed of between October 30, 1978 and July 9, 1978 and that defendant Pasquino’s constitutional rights were violated by such preferential treatment. Concerning CPL 30.30 he makes reference to the Federal rule governing retrials, and asserts there is insufficient proof that the People were actually ready on November 10, 1978 or thereafter before his motion was brought. Again, this court does not agree. Firstly, this is a retrial situation. Obviously, the People were ready at the first trial. Although the record of November 10, 1978 does not contain any specific representation by Assistant District Attorney Rakacky, there is Mr. Lanna’s statement that defendant was ready and the court’s granting of a preference (which was repreated a second time after a comment by Mr. Lanna concerning an unrelated indictment). It is fair to say that the District Attorney’s representative would be bound to that status in the absence of asserting he was not then ready. Furthermore, from that date forward it has been marked "ready” (with a preference) first on the "G” and later on the "L” printouts. This situation is readily distinguishable from the facts in People v Williams (67 AD2d 1094) and from those in the recent Court of Appeals decision in People v Hamilton (46 NY2d 932). In both of those cases, the prosecution’s bland conclusory assertions of a prior readiness were found insufficient. More to the point is United States v Pierro (478 F2d 386). There, although the United States attorney had technically failed to notify defendant or its counsel of the government’s readiness and had not properly filed such a statement with the trial court, the Second Circuit Court of Appeals found sufficient proof that the Government was "ready for trial” to defeat defendant’s speedy trial motion. The record in our case is even stronger concerning the People’s posture of readiness. CPL 30.30 merely mandates that the People "be ready” within this specified period. In this case, we need not even consider the various "exceptional circumstances” or other periods which are excluded under CPL 30.30 (subd 4). The motion to dismiss under CPL 30.30 is denied.
The second prong asserted in defendant’s motion to dismiss is based on defendant’s constitutional right to a speedy trial. These rights have been articulately discussed by the United States Supreme Court in Barker v Wingo (407 US 514) and redefined and explained by our New York Court of *1039 Appeals in such cases as: People v Dean (45 NY2d 651); People ex rel. Franklin v Warden, Brooklyn House of Detention for Men (31 NY2d 498); People v Imbesi (38 NY2d 629); People v Taranovich (37 NY2d 442); People v Ganci (27 NY2d 418); People v Prosser (309 NY 353). Under these authorities there is no rigid yardstick dictating a specific time interval between the initiation of the prosecution of a case and its disposition so as to decide a "speedy trial” question; in some cases delays of over two years have been held justified; in others, shorter periods, even less than one year have been held inexcusable. Taranovich (supra, p 445) sets forth five factors to be considered: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay”.
Each case must be decided upon an evaluation of all of these factors. No one factor or combination is determinative. There must be a sensitive weighing of all the circumstances on an ad hoc basis. In order to make such an evaluation in this case it will be necessary to refer to the case histories of the 12 indictments of Mr. Lanna which were disposed of in the eight-month period between October 30, 1978 and July 9, 1979 in connection with the testimony adduced at the hearing.
Justice Rubin testified that as part of his general duties as Deputy Administrative Judge of the Criminal Parts, he categorizes cases on the various "tracks” and also assigns cases to the various trial parts. In determining priorities, he gives preference to jail cases over bail cases and to the "R” and "S” tracks, which are the predicate felony cases and the serious cases, respectively. The Office of Court Administration has set forth various "Standards”. A memorandum from the Office of Court Administration, dated February 28, 1979, sets forth "Standards and Goals”. Included therein, inter alia, are the requirements that (1) "All violent felonies and Class 'A’ felonies committed on or after September 1, 1978, must be disposed of within six months from the date of indictment”; (2) all indictments prior to July 1, 1977 should be disposed of within one year from the date of indictment; (3) all felony charges between July 1, 1977 and September 30, 1977 should be disposed of by July 1, 1978; and (4) all felony indictments after October 1, 1977 should be disposed of within nine months of the date of indictment. A tentative deadline of *1040 August 31, 1979 was set by the Office of Court Administration for the retrial of this case.
Justice Rubin testified that Mr. Lanna’s office (most of which cases are tried by Mr. Lanna personally) has for many years had more cases on the criminal calendar in Westchester County than any other law office;[5] 6*that he also has an active criminal practice in the Federal courts (although decreasing in recent months) and, in addition, has been unavailable for trials in this county by reason of his activities as a General Officer in the National Guard; that his predecessor Justice George Beisheim, Jr., initiated a special "L” track for the convenience of Mr. Lanna and the court in the handling of Mr. Lanna’s cases; that he, Justice Rubin, continued the "L” track on succeeding Justice Beisheim as Deputy Administrative Judge, and that during the previous two years he has from time to time had informal, off the record, discussions with Mr. Lanna concerning all of Mr. Lanna’s cases which were all on the "L” track; that Mr. Lanna had an "input” at these informal conferences regarding the scheduling of the trials on such matters as availability of his witnesses, whether a case would require a trial or could be disposed of by plea, etc.; he stated that at no time had Mr. Lanna made • any objection to the use of the "L” track.[6]
Justice Rubin conceded that he made a mistake on November 10, 1978 when he put this case on the "G” track. Furthermore, he could not personally recall when it was placed on the "L” track. However, he did state that prior to this motion for a speedy trial Mr. Lanna never asked that the Pasquino case be tried before any of his other cases on the calendar. Mr. Lanna stated that he never specifically consented or was consulted by Justice Beisheim concerning the initial use of the "L” track system although he conceded he never objected to it. He denied any specific input as to the scheduling of his trials other than possibly requesting an adjournment by reason of a missing witness or perhaps to speed up a particular case for trial. He testified he had no discussion with Justice Rubin concerning this case from November of 1978 until a few weeks ago. Anthony Moley testified on rebuttal that in his *1041 capacity as Chief of the Superior Court Trial Division he would occasionally attend conferences between Justice Rubin and Mr. Lanna concerning the calendaring of cases. Although he could not recall any specific date he testified unequivocally that on at least one occasion this case was discussed at conference.
The court has carefully reviewed Exhibits No. 1 through No. 13 which contain the case histories of the Pasquino case and the 12 other Lanna cases disposed of between November 10, 1978 and July 9, 1979.[7] Although the Pasquino case was clearly erroneously designated on the "G” track rather than the "L” track, such a mistake in or of itself does not establish that other Lanna cases were improperly tried ahead of the Pasquino retrial. Also, it is obvious Mr. Lanna knew that the Pasquino case had been placed on the wrong track as this system had been in use for several years prior to that time. There is no duty on a defendant to affirmatively seek a speedy trial. (People v Prosser, 309 NY 353, 358, supra.) However, the absence of such action may be considered. (See People v Taranovich, 37 NY2d 442, 448, supra [dissent]; People v Blakley, 34 NY2d 311, 317.)
CPL 30.20 (subd 2) specifically gives a preference to jail cases over bail cases. The guidelines or "Standards” set forth by the Office of Court Administration must, of course, be recognized and used by the judicial officers in this county. In addition, the priorities set forth therein relating to dates of indictment and distinctions between violent felonies and class A felonies are unquestionably reasonable. Calendar congestion and the lack of adequate court facilities and personnel cause delays in the prosecution of cases. (See People ex rel. Franklin v Warden, Brooklyn House of Detention for Men, 31 NY2d 498, supra; People v Ganci, 27 NY2d 418, supra.) A primary factor here is the exceptionally heavy load of Mr. Lanna and the consequent difficulty in disposing of all of his cases expeditiously. Although he was apparently not actually on trial in any Federal court in the pertinent period, he generally had a relatively heavy Federal practice. During the trial of one case (Lifrieri) in this period he was unexpectedly called to active military duty for a period of 15 days by reason of the New York State Correction Officers’ strike. The declaration of a mistrial and immediate retrial on his release from active duty *1042 obviously affected his trial availability. A close review of these 12 cases as compared to the Pasquino retrial indicates, even by hindsight, that all of those cases were properly disposed of before Pasquino. Four of them (all 1977 indictments), were disposed of by pleas of guilty; three on November 16, 1978 and one on June 6, 1979. There is a reasonable probability those cases were set down at Mr. Lanna’s request during one of the "conferences”. In any event, the presence of Mr. Lanna on those four cases for a maximum of several hours in taking the change of pleas did not cause any real delay in the Pasquino retrial. One of the 12 was a retrial of a 1974 murder indictment. Two others were murder trials, one a 1977 indictment and the other a 1978 indictment in which the defendant was a jail case. The latter would fall under the six-month Office of Court Administration standard. In addition to the Office of Court Administration priorities set for class A felonies and violent felonies, the nature of the underlying charge has always been one factor to be considered in setting priorites. Obviously, murder cases fall in this category. (See People v Taranovich, 37 NY2d 442, supra; People v Johnson, 38 NY2d 271.) The remaining other dispositions were justifiable for the following reasons:
(1) An October 26, 1977 indictment charging sodomy in the first degree.
(2) An August 3, 1978 indictment charging assault in the second degree.
(3) A November 1, 1978 indictment charging a serious felony offense of robbery in the first degree, defendant in jail.
(4) An October 14, 1977 indictment charging sodomy in the first degree.
(5) A June 6, 1978 indictment charging grand larceny in the third degree, defendant being a predicate felon.
A chart showing certain factors pertaining to those 12 cases is shown in an appendix A. Ten of those indictments antedated the October 30, 1978 order for a new trial. Of the remaining two, defendant concedes one (Bevilacqua) was properly tried before Pasquino; the other (Lifrieri) was a November 1, 1978 indictment for a violent felony charge which falls within the six-month rule.
An examination of each of the five Taranovich factors to be considered leads to the inescapable conclusion that defendant has not been deprived of a speedy trial:
*1043 (1) The extent of the delay. The delay complained of in this case is from October 30, 1978, the date of the order of the new trial, to July 9, 1979, when the motion was made. The period from 1974 to October 30, 1978 must be generally excluded as the question of a speedy trial was raised on defendant’s appeal and the Appellate Division held that a "review of this issue is not warranted.” (People v Pasquino, 65 AD2d 629.) Consequently, we have only a period of slightly over 8 months involved. Dean (45 NY2d 651, supra) involved a lapse of 2 years; Imbesi (38 NY2d 629, supra) involved a period of 21 months; Taranovich (supra) involved a period of over 12 months; Ganci (27 NY2d 418, supra) involved a period of 16 months. A period of 8 months might possibly sustain a due process deprivation under exceptional circumstances. Such are certainly not present here.
(2) The reason for the delay. These considerations have been discussed at length above, including the heavy case load of defense counsel, the placing of the case inadvertently on the wrong track (without objection from defendant) and the priorities of other cases.
(3) The nature of the underlying charge. Here, the top count charged is merely a class D felony.
(4) Pretrial incarceration. Defendant has at no time been incarcerated under these charges.
(5) Impairment of defense. No assertion was made that defendant would in any way be prejudiced by this delay. (Defendant called no witnesses during his first trial.)
In fact, as asserted by the prosecutor, the only prejudice here would be to the People by reason of the passage of time.
In People v Imbesi (supra, p 631), the court stated the following, and defendant here certainly does not fall in any such category: "Reflected in these results is the threefold purpose of the speedy trial guarantee-protection against prolonged imprisonment, relief from anxiety and public suspicion attendant upon an untried accusation and prevention of loss of the means to prove innocence”.
A comment by this court is appropriate concerning the uniqueness of a private attorney having his own special calendar for criminal cases. A first impression could well be to question the wisdom of such an arrangement. However, a *1044 close examination and consideration of the facts heretofore set forth compels a different conclusion.
The courts have a substantial, frequently difficult burden to move cases as expeditiously as possible. This must be achieved to insure defendants speedy trials to which they have constitutional and statutory guarantees. The special "L” track calendar benefited Mr. Lanna and his clients by facilitating trials and dispositions. This also was clearly consistent with the objectives of the judicial system. This court concludes that without the "L” track the substantial number of trials and dispositions of Mr. Lanna’s cases over this eight-month period would not have been possible. This justifies the special calendar during this period. The courts have given a high priority to reducing backlogs and eliminating calendar congestion. The courts have a duty to take all reasonable measures to reduce backlogs. The creation and existence of the "L” track on the facts set forth during the period covered was reasonable.
Accordingly, the court denies defendant’s motion to dismiss on the constitutional grounds and under CPL 30.30.
APPENDIX A
Date Marked
Date Indict-Ready by Status of
Defendant ment Filed Both Sides Defendant Top Count
Andrew DiBenedetto Oct. 26, 1977 Mar. 31, 1978 Bail Sodomy in the first degree Rose Ann DeRuggiero Feb. 11, 1977 July 1, 1977 Bail Perjury
Roger DeRuggiero May 9,1977 Sept. 1, 1977 Jail-Oct. 11, 1977 Burglary in the third degree
Roger DeRuggiero Sept. 26,1977 Feb. 11, 1978 Jail-Oct. 11, 1978 Burglary in the second degree
Patricia Cohen July 29,1977 Nov. 1, 1977 Bail Murder in the second degree
Otha Harris Aug. 3,1978 Nov. 3, 1978 Bail Assault in the second degree
Vincent J.
Bevilacqua— July 18, 1974 Nov. 20, 1978 Jail Murder in the
Retrial second degree
Willie Battle Oct. 13, 1978 Jan. 2, 1979 Jail Murder
John Lifrieri (+) Retrial Nov. 1,1978 Jan. 11, 1979 Jail Robbery in the first degree
Andrew DiBenedetto Oct. 14, 1977 Mar. 1,1978 Bail Sodomy in the first degree
Maureen Lemme Dec. 20, 1977 Apr. 26, 1978 Bail Criminal negligent homicide
Giuseppe DiStefano June 6, 1978 Sept. 11, 1978 Bail Predicate felon grand larceny in the third degree

. The Criminal Court calendars for Supreme Court and County Court trials in Westchester County have been computerized for over five years.

. The computer system in Westchester County utilizes different "tracks” which classifies indictments by categories, viz.: (1) "S” — Serious, mandatory imprisonment cases; (2) "R” — Predicate felony cases; (3) "D” — Drug cases; (4) "G” — General cases; (5) "L” — Lanna cases.

. Each day there is a computer printout for the "G”, "S”, "R” and "D” tracks up to a maximum of 25 cases for each track. The cases appearing on these daily printouts *1037 are those either granted a preference or scheduled for early trials. The "L” track will be discussed later.

. The "L” track, contrary to the other four, is only printed weekly each Friday.

. The "L” track printouts of October 10, 1978 and June 29, 1979 show 18 and 21 Lanna cases, respectively. This is exclusive of other matters of Mr. Lanna with the District Attorney’s office but which have not reached the calendar stage.

. It is obvious to the court that a benefit would accrue to Mr. Lanna by having all (or most) of his cases placed on an individual track.

. See appendix A.